EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Manuel Antonio Natal Albelo, en su capacidad de candidato a la Alcaldía de San Juan por el Movimiento Victoria Ciudadana <br><br> Recurrido <br><br> v. <br><br> Miguel A. Romero Lugo, en su capacidad de candidato impugnado y otros <br><br> Peticionarios | Certiorari <br><br> 2021 TSPR 26 <br><br> 206 DPR ____ |

Número del Caso:  AC-2021-27
                  Cons. AC-2021-28


Fecha: 3 de marzo de 2021


Tribunal de Apelaciones:

     Panel VI


Abogados de los peticionarios:

**Miguel A. Romero Lugo**
     Lcdo. Eliezer Aldarondo Ortiz
     Lcda. Rosa Campos Silva
     Lcdo. Simone Cataldi Malpica
     Lcda. Sheila Torres Delgado
     Lcdo. Carlos Santiago Tavarez

**Comisionado Electoral**
**del Partido Nuevo Progresista**
     Lcdo. Francisco J. González Magaz


Abogados de los recurridos:

**Comisión Estatal de Elecciones**
     Lcdo. Feliz R. Passalaqua Rivera
     Lcdo. Jason Caraballo Oquendo

**Manuel A. Natal Albelo**
     Lcdo. Manuel A. Rodríguez Banchs
     Lcda. Tamara Sosa Pascual
     Lcdo. Jorge Farinacci Fernós

**Comisionado Electoral**
**del Partido Popular Democrático**
     Lcdo. Jorge Martínez Luciano
     Lcdo. Emil Rodríguez Escudero

**Comisionado Electoral
del Movimiento Victoria Ciudadana**
      Lcdo. José A. Rodríguez Jiménez

Materia: Resolución del Tribunal con Votos Particulares de Conformidad y Voto Particular Disidente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Manuel Antonio Natal Albelo, en su capacidad de candidato a la Alcaldía de San Juan por el Movimiento Victoria Ciudadana<br><br>Recurrido<br><br>v.<br><br>Miguel A. Romero Lugo, en su capacidad de candidato impugnado y otros<br><br>Peticionarios | AC-2021-0027<br>Cons. con<br>AC-2021-0028 | |

RESOLUCIÓN

En San Juan, Puerto Rico, a 3 de marzo de 2021.

El 19 de febrero de 2021, el Hon. Miguel A. Romero Lugo (peticionario) presentó ante este Tribunal un recurso de *Apelación* en el cual nos solicitó la revisión de una *Sentencia* dictada el 15 de febrero de 2021, por el Tribunal de Apelaciones (TA), la cual revocó una Sentencia emitida por el Tribunal de Primera Instancia (TPI) en el caso Civil Núm. SJ2021CV00284. Ese mismo día, la Comisionada Electoral del Partido Nuevo Progresista, la Lcda. Vanessa Santo Domingo-Cruz, presentó la Apelación Núm. AC-2021-028. Tras examinar los escritos sometidos, ordenamos la consolidación de ambos recursos.

Por otro lado, se le ordenó a la parte recurrida, el Lcdo. Manuel Antonio Natal Albelo, para que compareciera el lunes, 22 de febrero de 2021 en o antes de las 2:00 p.m. y se expresara sobre lo expuesto en los recursos presentados. Oportunamente, la parte recurrida compareció y presentó el escrito intitulado *Alegato de Parte* Apelada. Asimismo, compareció el Hon. Francisco Rosado Colomer en su carácter oficial como Presidente de la Comisión Estatal de Elecciones mediante *Escrito Exponiendo Posición de Comisión Estatal de Elecciones.* Por su parte, también compareció el Lcdo. Gerardo A. Cruz Maldonado, en su capacidad oficial como Comisionado Electoral del Partido Popular Democrático con el *Alegato del Comisionado Electoral del Partido Popular Democrático.* A su vez, compareció el Lcdo. Olvin Valentín Rivera, en su capacidad

de Comisionado Electoral de Movimiento Victoria Ciudadana con el *Alegato en Oposición a Recursos de Apelación.*

Examinados los recursos de Apelación previamente consolidados, se acogen como *Certiorari* y se provee **no ha lugar**.

Notifíquese inmediatamente.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emite un Voto Particular de Conformidad. El Juez Asociado señor Martínez Torres emite un Voto Particular de Conformidad al que se une el Juez Asociado señor Kolthoff Caraballo. El Juez Asociado señor Estrella Martínez emite un Voto Particular de Conformidad al que se une la Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Kolthoff Caraballo. El Juez Asociado señor Colón Pérez emite un Voto Particular de Conformidad. El Juez Asociado señor Rivera García emite un Voto Particular Disidente, al que se une la Jueza Asociada señora Pabón Charneco.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Manuel Antonio Natal Albelo, en su capacidad de candidato a la Alcaldía de San Juan por el Movimiento Victoria Ciudadana<br><br>Recurrido<br><br>v.<br><br>Miguel A. Romero Lugo, en su capacidad de candidato impugnado, y otros<br><br>Peticionario | AC-2021-27 cons. con AC-2021-28 | |

Voto Particular de Conformidad emitido por la Jueza Presidenta Oronoz Rodríguez.

En San Juan, Puerto Rico, a 3 de marzo de 2021.

Estoy de acuerdo con el curso de acción de este Tribunal al acoger ambos recursos como *certiorari* y proveer *No Ha Lugar*. Según adelanté el 19 de febrero de 2021, el Tribunal de Apelaciones resolvió correctamente esta controversia por lo que procedía que se declararan *No Ha Lugar* los recursos presentados y que el trámite continuara ante el Tribunal de Primera Instancia lo antes posible.

En este caso, el foro primario adquirió jurisdicción sobre el candidato impugnado, Hon. Miguel A. Romero Lugo, mediante una notificación adecuada que se diligenció conforme al Art. 10.15 del Código Electoral de Puerto Rico de 2020, Ley Núm. 58-2020. 16 LPRA sec. 4765. Exigir

una segunda notificación, mediante la expedición y diligenciamiento posterior de un formulario de emplazamiento conforme a la Regla 4.4 de Procedimiento Civil, según se pretendía con estos recursos, es un acto redundante e irrazonable, y contrario al texto específico de la ley especial, el Código Electoral de Puerto Rico de 2020, supra.

I.

La jurisdicción sobre la persona está inexorablemente atada al debido proceso de ley. Reyes v. Oriental Fed. Savs. Bank, 133 DPR 15, 21 (1993). Por eso, la notificación conforme a derecho o el emplazamiento es el paso inaugural del debido proceso de ley que permite el ejercicio de jurisdicción por el tribunal para adjudicar derechos de una persona demandada. Íd., pág. 22; Álvarez v. Arias, 156 DPR 352, 366 (2002). En aras de garantizar el derecho a un debido proceso de ley, hemos resuelto que "**el método para emplazar que se utilice** debe tener una **probabilidad razonable de notificar o informar** al demandado sobre la acción entablada en su contra, de forma tal que éste pueda comparecer a defenderse, si así lo desea". Márquez v. Barreto, 143 DPR 137, 143 (1997). (Énfasis suplido). Véase Quiñones Román v. CIA ABC, 152 DPR 367, 374 (2000).

En los procesos ordinarios y los extraordinarios, la aclaración de lo que es una notificación adecuada como método de emplazamiento, no es de nueva creación. De

hecho, existe legislación especial y normativa variada en distintos temas que provee para un mecanismo de notificación en lugar del emplazamiento clásico, con una razón de ser específica: promover procesos más expeditos y ágiles. A modo ilustrativo, en las acciones sobre obligación de prestar alimentos a menores al amparo del Art. 15 de la Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 de 20 de diciembre de 1986, según enmendada, se notifica la acción mediante una notificación-citación, junto con la copia de la petición, diligenciada o notificada por la parte promovente. 8 LPRA sec. 514. De igual manera, se utiliza la notificación-citación en los procedimientos de cobro de dinero de cuantías pequeñas al amparo de la Regla 60 de Procedimiento Civil siempre que no se solicite en la demanda tramitar el caso bajo el procedimiento ordinario. 32 LPRA Ap. V, R. 60. Asimismo ocurre con la notificación de los recursos de *injunction* al amparo de la Regla 57.2 de Procedimiento Civil. Esa Regla exige la entrega de copia de la orden junto con copia de la petición de *injunction* a la parte adversa con el mismo efecto de la entrega y diligenciamiento del emplazamiento bajo la Regla 4.4 de Procedimiento Civil. 32 LPRA Ap. V, R. 57.2. Esas acciones tienen en común que, por su origen, propósitos y naturaleza, se legisló un procedimiento ágil y simple para lograr la facilitación del acceso a los tribunales y la celeridad que esos asuntos ameritan.

Esa es la celeridad que caracteriza el trámite de asuntos electorales como estos. En particular, la naturaleza *sui generis* del proceso eleccionario rige la forma mediante la cual se garantizará el debido proceso de ley del candidato impugnado y cómo el foro primario adquiere jurisdicción sobre su persona. A esos efectos, el Art. 10.15 del Código Electoral de Puerto Rico de 2020, supra, es inequívoco al establecer lo siguiente: "[u]na copia fiel y exacta del escrito de impugnación será **notificada al candidato impugnado** y se le **entregará personalmente**, dentro de los **cinco (5) días siguientes a su presentación**". 16 LPRA sec. 4765. (Énfasis suplido).

## II.

En este caso, surge del expediente que el 14 de enero de 2021, el candidato Manuel Natal Alvelo presentó el recurso de impugnación ante el Tribunal de Primera Instancia.[1] El próximo día, el 15 de enero de 2021, el foro primario dictó una *Orden de Mostrar Causa* (Orden) junto con el formulario intitulado *Diligenciamiento*.[2] El 17 de enero de 2021, **se diligenció, mediante entrega personal** al candidato impugnado, Hon. Miguel A. Romero Lugo, la **Orden** y una copia del **escrito de impugnación.** Lo anterior, se puede constatar al examinar el documento intitulado ***Diligenciamiento*** que suscribió el emplazador Gilbert J. López Delgado, bajo juramento, y cuya presentación en el tribunal se registró el 20 de enero de

---

[1] *Impugnación de Elección*, Apéndice, pág. 34.
[2] *Orden de Mostrar Causa y Diligenciamiento*, Apéndice, págs. 86-88.

2021.[3] De la Orden surge una serie de datos específicamente dirigidos a proteger el derecho a un debido proceso de ley del Hon. Miguel A. Romero Lugo. Primero, la Orden contiene un resumen conciso sobre la naturaleza de la causa de acción y quién la presentó. Segundo, expresamente se le concedió al Hon. Miguel A. Romero Lugo hasta el 21 de enero de 2021 a las 4:00 p.m., para comparecer y mostrar causa por la cual no se debían conceder los remedios solicitados en el recurso de impugnación.[4] Tercero, se le advirtió que, transcurrido ese término sin haber actuado o comparecido por escrito a mostrar causa, se procedería a conceder los remedios solicitados sin más citarle, oírle ni leerle.[5]

Ante esa realidad fáctica, el foro primario adquirió jurisdicción sobre la persona del Hon. Miguel A. Romero Lugo cuando se le entregó personalmente el diligenciamiento de la notificación y *Orden de mostrar causa* junto con la copia del escrito de impugnación dentro del término de 5 días que dispone el Art. 10.15 del Código Electoral de Puerto Rico de 2020, supra. Esa notificación, suficiente y adecuada, es el método de emplazamiento que el legislador estableció, mediante una ley especial, para el procedimiento de impugnación. En ese sentido, al Hon. Miguel A. Romero Lugo se le garantizó su debido proceso de ley, pues conoció del

---

[3] *Diligenciamiento*, Apéndice, pág. 95.
[4] *Orden de Mostrar Causa*, Apéndice, pág. 86.
[5] Íd., pág. 87.

recurso de impugnación que se presentó en su contra, la naturaleza de la acción, el plazo para comparecer y la oportunidad de así hacerlo con la consabida consecuencia de su incomparecencia.

## III.

A la luz de todo lo anterior y en la medida en que se cumplió con la notificación adecuada que exige el debido proceso de ley, no cabe exigir una segunda notificación. Por eso, el Tribunal de Apelaciones actuó correctamente al revocar la determinación del foro primario. El procedimiento de impugnación debe continuar, sin dilación adicional, ante el Tribunal de Primera Instancia.

Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Manuel Antonio Natal Albelo, en su capacidad de candidato a la Alcaldía de San Juan por el Movimiento Victoria Ciudadana | | |
|---|---|---|
| Recurrido | AC-2021-0027 cons. con AC-2021-0028 | |
| v. | | |
| Miguel A. Romero Lugo, en su capacidad de candidato impugnado y otros | | |
| Peticionarios | | |

Voto Particular de Conformidad emitido por el Juez Asociado señor MARTÍNEZ TORRES, al cual se unió el Juez Asociado señor KOLTHOFF CARABALLO.

En San Juan, Puerto Rico a 3 de marzo de 2021.

Estoy conforme con proveer no ha lugar al recurso que se presentó. Entiendo que el foro primario adquirió jurisdicción personal sobre el candidato impugnado, mediante una notificación que se diligenció conforme con el Art. 10.15 del Código Electoral, infra, y la Regla 4 de Procedimiento Civil, infra.

I

El 31 de diciembre de 2020, la Comisión Estatal de Elecciones (CEE) certificó al Hon. Miguel A. Romero Lugo como el alcalde electo del Municipio de San Juan. Véase, *Certificación Comisión Estatal de Elecciones*, Ap. Apelación, pág. 66. La certificación se notificó el 4 de

enero de 2021. Véase, *Notificación de certificación Comisión Estatal de Elecciones*, Ap. Apelación, pág. 67.

Inconforme con la certificación emitida, el 14 de enero de 2021 el Lcdo. Manuel Antonio Natal Albelo presentó en el Tribunal de Primera Instancia una *Impugnación de elección* al amparo del Art. 10.15 del Código Electoral de Puerto Rico de 2020, 16 LPRA sec. 4765 (Código Electoral). Al día siguiente, el 15 de enero de 2021, el tribunal emitió una *Orden de mostrar causa*. Asimismo, el tribunal le ordenó al recurrido "diligenciar, y además notificar esta orden con copia del recurso y sus anejos a todos los peticionados, de conformidad a lo dispuesto en la Regla 4.4 de Procedimiento Civil [32 LPRA, Ap. V]". Orden de mostrar causa, Ap. Apelación, págs. 86-87. Conforme con lo anterior, el 17 de enero de 2021 se entregó personalmente la orden con su diligenciamiento y copia fiel y exacta del escrito de Impugnación de elección al Hon. Romero Lugo.

La orden contenía el nombre de las partes, tribunal, sala, número del salón, número del caso y materia de la acción. Además, indicaba:

> Don Manuel Natal Albelo … **ha presentado ante este Tribunal el escrito titulado *Impugnación de elección*.** Expone múltiples irregularidades acontecidas en la Unidad 77… El peticionario nos solicita que dejemos sin efecto la certificación emitida el pasado 31 de diciembre de 2020, en la que se proclamó al Sr. Miguel Romero Lugo como candidato electo a la Alcaldía de San Juan. Además peticiona que ordenemos a

la [CEE] que proceda a celebrar una elección especial en la Unidad 77.

Examinado el escrito presentado este Tribunal dicta la siguiente Orden de Mostrar Causa:

- <u>Tenga[n] los peticionados</u>, **hasta el próximo 21 de enero de 2021 a las 4:00p.m. para que muestre causa por la cual no se deba conceder los remedios solicitados.**

- **Los peticionados quedan advertidos que, transcurrido dicho termino sin haber actuado, compareciendo por escrito a mostrar causa, este Tribunal procederá a conceder los remedios solicitados sin más citarle, oírle ni leerle.**

  …

- **Advertimos a la parte peticionada que el caso deberá tramitarse a través del sistema electrónico SUMAC.** (subrayado en el original; negrillas nuestras). Orden de mostrar causa, Ap. Apelación, págs. 93-94.

Por su parte, el diligenciamiento se entregó a la Secretaría del tribunal con la correspondiente declaración bajo juramento. El diligenciante certificó que diligenció la orden y escrito de impugnación el 17 de enero de 2021. Hizo constar que se llevó a cabo mediante entrega personal a la parte impugnada y la dirección física adonde ello se realizó. En especifico, certificó: "recibí la Orden *e impugnación de elección* al dorso el 16 de enero de 2021 **notificándola personalmente a Miguel A. Romero Lugo,** en su capacidad de candidato impugnado **el 17 de enero del 2021 a las 10:00 a.m. en … San Juan, Puerto Rico".** <u>Íd</u>., pág. 95. La parte donde se indica "e Impugnación de Elección" se añadió a manuscrito.

Entonces, el 20 de enero de 2021, el licenciado Natal Albelo presentó una *Moción en cumplimiento de orden*

en la que sostuvo que incluyó los emplazamientos de todos los peticionados diligenciados, según ordenado por el foro de instancia. Sin embargo, ese mismo día el tribunal le notificó que solo incluyó evidencia del diligenciamiento de la orden, mas no así evidencia de los emplazamientos diligenciados. Esa tarde, el licenciado Natal Albelo pidió al foro primario que le proporcionara los correspondientes emplazamientos. **Para esa fecha, la Secretaría del Tribunal todavía no había expedido los emplazamientos** a pesar de que el tribunal requirió su entrega antes de la fecha señalada para la vista.

Al día siguiente, el 21 de enero de 2021, el licenciado Natal Albelo presentó en el tribunal los emplazamientos diligenciados. Manifestó que sirvió copia del emplazamiento al Hon. Romero Lugo a través del Lcdo. Israel O. Alicea Luciano, Director de la Oficina de Asuntos Legales del Municipio de San Juan. En esa misma fecha, sin someterse a la jurisdicción del tribunal, el Hon. Romero Lugo presentó una moción de desestimación por falta de jurisdicción sobre la persona. Arguyó que no se le emplazó conforme con el término específico de cinco días dispuesto en el Art. 10.15 del Código Electoral, supra. Además, indicó que el licenciado Alicea Luciano es un funcionario municipal que no lo representa en su carácter personal sino en su carácter oficial. En respuesta, el licenciado Natal Albelo sostuvo que el Tribunal adquirió jurisdicción sobre el peticionario

cuando se diligenció personalmente copia de la orden de mostrar causa junto con el escrito de impugnación o, en la alternativa, con el emplazamiento dentro del término de cinco días, según lo establece la Regla 68.1 de Procedimiento Civil, 32 LPRA Ap. V.

Luego de varios trámites procesales, incluyendo la presentación de un recurso de certificación intrajurisdiccional ante este Tribunal, al que proveímos no ha lugar, el foro de primera instancia desestimó la impugnación de la elección porque no adquirió jurisdicción sobre el candidato impugnado. Concluyó que el emplazamiento fue inoficioso ya que el candidato impugnado no fue emplazado dentro del término de cinco días que establece el Código Electoral de 2020. También, determinó que el Art. 10.15 del Código Electoral, supra, requiere la aplicación de la Regla 4.4 de Procedimiento Civil, supra. Además, resolvió que según el Art. 2.4 del Código Electoral, 16 LPRA sec. 4504, el término de cinco días para notificar una impugnación de una elección es específico y de carácter jurisdiccional, al que no le aplica la extensión de la Regla 68.1 de Procedimiento Civil, supra.

Inconforme, el licenciado Natal Albelo acudió al Tribunal de Apelaciones. Ese foro revocó. En esencia, concluyó que el foro primario adquirió jurisdicción sobre el candidato impugnado. En particular, señaló que la entrega personal de la demanda, junto con la orden,

brindó una notificación adecuada al peticionario, conforme con las exigencias del Art. 10.15 del Código Electoral, supra, y las Reglas de Procedimiento Civil. En desacuerdo con la decisión, el Hon. Romero Lugo acudió ante este Tribunal el 19 de febrero de 2021, mediante recurso titulado Apelación. En la alternativa, nos solicitó que se expida un auto de certiorari. Acogemos el recurso como una solicitud de certiorari, porque el conflicto de sentencias que se invoca no es uno de sentencias en casos apelados al tribunal de Apelaciones. Art. 3.002(c) de la Ley Núm. 201-2003, conocida como la Ley de la Judicatura de 2003, según enmendada. Uno de los dictámenes invocados se emitió en un certiorari discrecional a ese foro.

II

El emplazamiento es un mecanismo procesal a través del cual el tribunal adquiere jurisdicción sobre la persona del demandado. Bernier González v. Rodríguez Becerra, 200 DPR 637, 644 (2018). Este "representa el paso inaugural del debido proceso de ley que viabiliza el ejercicio de la jurisdicción judicial". Acosta v. ABC, Inc., 142 DPR 927, 931 (1997). Es indispensable que el emplazamiento se haga conforme a derecho para que una persona sea considerada como parte de la acción instada. Rivera Marrero v. Santiago Martinez, 203 DPR 462, 490 (2019); Sánchez Rivera v. Malavé Rivera, 192 DPR 854 (2015). Esto se basa en que la política pública de

nuestro ordenamiento jurídico es evitar el fraude y los procedimientos judiciales que priven a una persona de su propiedad sin el debido proceso de ley. Bernier González v. Rodríguez Becerra, supra, pág. 644. Así, hemos reconocido que esa política pública pesa más que el principio de economía procesal. Íd., págs. 644-45. Por ello, se permite al demandado impugnar el emplazamiento con el fin de asegurar el estricto cumplimiento de las reglas que garantizan que se adquirió jurisdicción personal sobre un demandado. Íd., pág. 645.

La Regla 4 de Procedimiento Civil, 32 LPRA Ap. V, regula el proceso de emplazamiento de una acción civil. La regla dispone que la demanda y el emplazamiento deben diligenciarse conjuntamente en las acciones civiles. Para esto es necesario que en la Secretaría del tribunal se presente la demanda junto con un formulario de emplazamiento. Regla 4.1 de Procedimiento Civil, 32 LPRA Ap. V. Al expedirse, el emplazamiento debe estar firmado por el Secretario, llevar el nombre y sello del tribunal, contener el nombre de las partes y dirigirse a la parte demandada. Regla 4.2 de Procedimiento Civil, 32 LPRA Ap. V. También, deben incluirse los datos de la parte demandante, es decir: su nombre, dirección postal, número de teléfono, dirección electrónica y el número de RUA de su abogado. Íd. Además, el emplazamiento debe indicar el plazo en que la parte demandada debe comparecer al

tribunal, apercibiéndole de las consecuencias de no hacerlo. Íd.

El diligenciamiento personal se hará mediante la entrega formal de la demanda y el formulario de emplazamiento. El diligenciante hará constar al dorso de la copia del emplazamiento, sobre su firma: la fecha, el lugar, el modo de la entrega y el nombre de la persona a quien se hizo. Regla 4.4 de Procedimiento Civil, 32 LPRA Ap. V. Una vez realizado el diligenciamiento, se dará constancia al tribunal de que se llevó a cabo dentro del plazo que la persona emplazada tiene para comparecer. Regla 4.7 de Procedimiento Civil, 32 LPRA Ap. V. En aquellos casos en que una persona particular realizó el diligenciamiento personal, el diligenciante presentará una declaración jurada para hacerlo constar. Íd. En ella certificará la fecha y manera en que lo hizo. Véase, además, J. A. Cuevas Segarra, <u>Tratado de Derecho Procesal Civil</u>, 2da ed., Publicaciones JTS, 2011, T. V, pág. 369.

Hemos reconocido que el propósito fundamental del emplazamiento es "**<u>notificar</u> a la parte demandada, a grandes rasgos, que existe una acción judicial en su contra para que, si así lo desea, ejerza su derecho a comparecer en el juicio, ser oído y presentar prueba a su favor**". (énfasis suplido). <u>Banco Popular v. S.L.G. Negrón</u>, 164 DPR 855, 863 (2005). Así, hemos dicho que "**el método de <u>notificación</u> que se utilice debe ofrecer una probabilidad razonable —a la luz de los hechos del caso—**

**de informarle al demandado de la acción en su contra".** (énfasis suplido). <u>Íd</u>. Asimismo, en <u>Álvarez v. Arias</u>, 156 DPR 352, 366 (2002) dijimos que "[e]s el **emplazamiento o una <u>notificación</u>** el mecanismo procesal mediante el cual el tribunal hace efectiva su jurisdicción y le informa al demandado que existe una reclamación en su contra". (énfasis suplido). En esta misma línea, el tratadista Cuevas Segarra sostiene:

> **<u>Se cumple con el debido proceso de ley cuando el método adoptado de notificación es uno razonablemente utilizado a la luz de los hechos del caso</u>, para dar <u>notificación</u> al demandado de la acción presentada en su contra,** para que pueda tomar una decisión informada sobre si desea o no comparecer a defenderse. (énfasis suplido). Cuevas Segarra, <u>Op. cit</u>, pág. 299.

III

El Art. 10.15 del Código Electoral, <u>supra</u>, regula el proceso de impugnación de una elección. Este dispone:

> Cualquier Candidato que impugnare la elección de otro, **deberá presentar ante el Juez en la Sala de la Región Judicial de San Juan** designada de conformidad con el Capítulo XIII de esta Ley, y dentro de los diez (10) días siguientes a la fecha de notificación de la certificación de elección para cada cargo público electivo en el escrutinio general, un escrito, exponiendo bajo juramento las razones en que fundamenta su impugnación, las que deberán ser de tal naturaleza que, de probarse, bastarían para cambiar el resultado de la elección.
>
> Una **copia fiel y exacta del escrito de impugnación** será <u>notificada</u> **al Candidato impugnado <u>y se le entregará personalmente</u>, dentro de los cinco (5) días siguientes a su presentación.**
>
> El Candidato cuya elección fuese impugnada, tendrá que presentar ante el Tribunal una contestación bajo juramento,

dentro de los diez (10) días siguientes a la fecha en que recibiere la notificación del escrito de impugnación y **certificará haber notificado y entregado personalmente copia de su contestación al impugnador o a su representante legal**. Se entenderá que la persona cuya elección fue impugnada acepta la impugnación como cierta de no contestar en dicho término.

**La notificación, escrito y contestación prescritos en esta Ley, podrán ser diligenciados por cualquier persona competente para testificar y se diligenciarán mediante entrega personal a las respectivas partes, a sus representantes electorales, conforme a lo establecido en las Reglas de Procedimiento Civil o en la residencia u oficina de la persona a quien fueren dirigidas**. A los fines de este Artículo, el representante electoral de un candidato por un partido político será el integrante de la Comisión Local del precinto de su domicilio que represente a su partido político. (énfasis suplido). Íd.

Como vemos, el artículo no menciona la palabra "emplazamiento" ni hace referencia específica a la Regla 4.4 de Procedimiento Civil, supra. Asimismo, podemos notar que cuando el Art. 10.15 del Código Electoral, supra, se refiere a las Reglas de Procedimiento Civil se limita a la forma en las que se pueden diligenciar la notificación, escrito y contestación. El último párrafo del Art. 10.15, supra, indica: "[l]a notificación, escrito y contestación prescritos en esta Ley, **podrán ser diligenciados** por cualquier persona competente para testificar y se diligenciarán mediante entrega personal a las respectivas partes, a sus representantes electorales, conforme a lo establecido en las Reglas de Procedimiento Civil o en la residencia u oficina de la persona a quien fueren dirigidas." (énfasis suplido). Íd. Como vemos, ese

párrafo no se limita a mencionar la notificación y escrito, sino que incluye también la contestación. Aunque la contestación al escrito de impugnación no requiere, obviamente, un emplazamiento, el Art. 10.15 del Código Electoral, supra, requiere que esta contestación —al igual que la notificación y el escrito— sea diligenciada personalmente.

Resulta revelador que la Asamblea Legislativa hizo referencia a las Reglas de Procedimiento Civil para el asunto del diligenciamiento de la notificación, pero no así para requerir el emplazamiento propiamente. Aquí, la legislatura determinó el modo en que se diligenciarán la entrega de la notificación, el escrito y la contestación. En ese sentido, esta disposición legal sujeta el diligenciamiento de estos tres documentos a los requisitos constitucionales mínimos que se recogen en las Reglas de Procedimiento Civil, supra. Es necesario que esa entrega sea debidamente diligenciada. Vemos, pues, que el legislador quiso preservar las garantías que proveen las Reglas de Procedimiento Civil, para garantizar un debido procedimiento de ley y una notificación expedita.

La referencia a las Reglas de Procedimiento Civil incorpora la manera para diligenciar la notificación del pleito de impugnación de una elección. No se refiere a los métodos para notificar. Por eso no está disponible el emplazamiento por edictos. Este es claramente inaplicable

a pleitos como este, por la rapidez del procedimiento diseñado para impugnar una elección.

De todos modos, aunque aceptáramos lo que propone el Hon. Romero Lugo —que la notificación a la que se refiere el Art. 10.15 del Código Electoral, supra, es el emplazamiento— vendríamos obligados a concluir que la Orden de mostrar causa que se diligenció personalmente al Hon. Romero Lugo, tiene el mismo efecto. Al final de cuentas, la notificación de la orden tuvo el mismo efecto que un emplazamiento.

IV

El Hon. Romero Lugo trae a nuestra atención la interpretación que realizó el foro apelativo intermedio en Ramos Hernández v. Comisión Estatal De Elecciones, KLCE20101679 (TA 2010). En ese caso, el Tribunal de Apelaciones resolvió:

> [L]a persona que interesa impugnar la elección de un candidato y por consiguiente, su certificación, tiene que presentar su recurso en el Tribunal de Primera Instancia de acuerdo a los términos y el trámite que establece la ley y las Reglas de Procedimiento Civil, las cuales regulan los procesos civiles en nuestros Tribunales. Esto incluye el emplazamiento a las personas o entidades contra las que se reclama, conforme a la Regla 4 de Procedimiento Civil, a fin de que el TPI pueda ejercer su jurisdicción sobre esas partes. Íd., pág. 3.

En ese caso, el señor Ramos Hernández **entregó personalmente a una secretaria el escrito de impugnación, sin más.** No hizo constar el diligenciamiento y no advirtió a la otra parte los términos aplicables, a quién

y en qué foro comparecer ni las consecuencias de no hacerlo.

Por el contrario, en el presente caso se diligenció una Orden de mostrar causa mediante entrega personal al candidato impugnado —Hon. Romero Lugo— junto al escrito de impugnación, con todos sus anejos, tres días después de que se presentó el escrito de impugnación. **La orden diligenciada contenía la información que faltó en el caso que cita el Hon. Romero Lugo.**

El Hon. Romero Lugo sostiene que el formulario "OAT 1721 Emplazamiento (SUMAC), Revisado Mayo 2019" (Formulario OAT 1721) contiene el lenguaje necesario, según las normas del Sistema Unificado de Manejo y Administración de Casos (SUMAC), para advertir a las partes que toda presentación de escritos se hace por la vía electrónica, a través de este portal. Véase, Apelación págs. 14-15.

En específico, en el Formulario OAT 1721 se debe incluir el nombre de las partes, tribunal, sala, número de salón, número de caso y materia o asunto de la acción. Además, en este se debe indicar el plazo en que debe comparecer al tribunal la parte demandada, apercibiéndole de las consecuencias de no hacerlo. Al final, se debe incluir la información del abogado de la parte demandante. Por su parte, en la hoja del diligenciamiento, el diligenciante debe especificar la

forma en la que entregó el emplazamiento y la demanda del caso.

En Dávila Pollock et al. v. R.F. Mortgage, 182 DPR 86, 97 (2011), establecimos que la notificación de los dictámenes judiciales guarda relación con el uso del formulario administrativo correcto, según diseñado por la OAT. Allí, el formulario con el que se notificó inicialmente el dictamen a la parte contraria no contenía ninguna advertencia sobre el término que esta tenía para acudir ante el Tribunal de Apelaciones a revisar el dictamen emitido. Sin embargo, el Tribunal de Primera Instancia corrigió posteriormente la notificación para usar el formulario que sí contenía esa advertencia, y la parte perjudicada por el dictamen apeló. Por lo tanto, en esa ocasión explicamos que el Tribunal de Apelaciones tenía jurisdicción para atender la apelación, debido a la notificación enmendada.

Basándose en esto, el Hon. Romero Lugo alega que el Formulario OAT 1721 es el único mecanismo procesal con la función de notificar a un demandado que hay una reclamación judicial en su contra para que, si así lo desea, ejerza su derecho a comparecer en el juicio, ser oído y presentar prueba a su favor. Así, sostiene que como la Orden de mostrar causa no es el Formulario OAT 1721, no se debe entender que fue emplazado. Según él, el contenido del diligenciamiento de la referida orden es distinto al del Formulario OAT 1721. Aduce que "[e]l

primero es más simple" y "[e]l segundo contiene datos adicionales que tienen que ser completados por el diligenciante". Apelación, pág. 20.

Sobre esto último, señala que el diligenciante tiene que señalar: (1) si se hizo accesible en la inmediata presencia de la parte demandada; (2) si se dejó copia de los documentos a un agente autorizado por la parte demandada; o, (3) si no se pudo diligenciar el emplazamiento personalmente, con las razones para ello. Íd. Además, sostiene que "[n]ada de esto se indica ni se requiere en el diligenciamiento de la Orden de Mostrar Causa." Íd. Concluye que "[e]l diligenciamiento de la Orden de Mostrar Causa, por sí solo, no tiene ni puede tener el efecto de conceder jurisdicción sobre un demandado si éste no es debidamente emplazado con copia de la demanda en su contra, conforme lo exige la Regla 4.4 de Procedimiento Civil". Íd., pág. 21. Básicamente plantea que el defecto fatal fue que no se le entregó el formulario de emplazamientos de la OAT.

Visto esto, debemos aclarar que **no existen formularios oficiales de emplazamiento para acciones de impugnación de elección.** El Formulario OAT 1721, al que el Hon. Romero Lugo hace referencia, es el que se utiliza en las acciones civiles ordinarias. Además, no es correcto afirmar que el Formulario OAT 1721 o el emplazamiento es el único mecanismo procesal con la

función de notificar a un demandado que hay una reclamación judicial en su contra.

El legislador ha contemplado otros mecanismos para notificar y adquirir jurisdicción sobre la persona en una acción judicial. A modo de ejemplo, la Regla 60 de Procedimiento Civil, 32 LPRA Ap. V, R. 60, establece que "la parte demandante deberá presentar un <u>proyecto de notificación-citación</u> que será expedido inmediatamente por el Secretario o Secretaria". Asimismo, el inciso (b) del Art. 3 de la Ley sobre Controversias y Estados Provisionales de Derecho, 32 LPRA sec. 2873, establece que para que el tribunal y magistrado adquieran jurisdicción sobre una controversia, "el magistrado <u>dispondrá la citación de las partes envueltas, bajo apercibimiento de desacato</u>, para una comparecencia ante el dentro de un término que no excederá de cinco (5) días".

Tampoco es correcto afirmar que la Orden de mostrar causa que se emitió es más simple que el Formulario OAT 1721. Todo lo contrario. De una lectura de la referida orden vemos que esta es mucho más detallada y completa. La referida Orden: (1) contenía el sello del tribunal, nombre de las partes, tribunal, sala, número del salón, número del caso y materia de la acción, (2) se entregó personalmente al Hon. Romero Lugo junto al escrito de impugnación y sus anejos, (2) contenía un resumen de la causa de acción (cosa que no se encuentra en el

formulario del emplazamiento) (3) advertía al Hon. Romero Lugo el plazo para comparecer, (4) le apercibía que de no comparecer se podría dictar sentencia concediendo los remedios solicitados, y (5) al dorso de la copia de la Orden, el diligenciante especificó, sobre su firma y bajo juramento: la fecha, el lugar, la entrega personal y el nombre de la persona a quien la entregó.

Lo único que no aparece en la orden es la información de los abogados del licenciado Natal Albelo. Sin embargo, en Sociedad de Gananciales v. Tribunal Superior, 85 DPR 892 (1962) (Sentencia), nos enfrentamos a una situación en la que en el emplazamiento expedido no se hizo constar el nombre y dirección del abogado de la parte demandante. En ese caso, al diligenciarse el emplazamiento se le entregó simultáneamente una copia fiel de la demanda a la parte demandada. Allí explicamos que el único propósito que informa la expresión en el emplazamiento del nombre y la dirección del abogado de la parte demandante es permitirle a la parte demandada notificar cualquier alegación o moción que intente radicar. Íd., pág. 894.

Por eso, concluimos entonces que se cumplió sustancialmente con el propósito indicado ya que en la copia de la demanda que se entregó personalmente aparecía claramente esa información. Íd. "No puede anularse un emplazamiento expedido donde no consta el nombre y dirección del abogado de la parte demandante cuando éste

acompaña al mismo copia de la demanda en que constan dichos datos". Hernández Colón, _Práctica jurídica de Puerto Rico: derecho procesal civil_, 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 261, esc. 10.

En el caso que tenemos ante nuestra consideración, se entregó copia del escrito de impugnación junto a la Orden de mostrar causa. El escrito de impugnación contenía la información de los abogados del licenciado Natal Albelo. Además, la _Orden de Mostrar Causa_ instruía al Hon. Romero Lugo que el caso debía tramitarse a través del sistema electrónico SUMAC. Para ello le hizo accesible el número del caso de impugnación. Como es de conocimiento, al someter un escrito por SUMAC, este notifica automáticamente a las partes que están registradas en el pleito. Por consiguiente, el Hon. Romero Lugo tenía acceso a la información necesaria sobre la representación legal del señor Natal Albelo.

En fin, hemos reconocido que aunque las formalidades son importantes, lo fundamental es que se notifique al demandado que se instó una acción judicial en su contra para que pueda defenderse.[6]

---

[6] Véase, _Bco. Cent. Corp. v. Capitol Plaza, Inc._, 135 DPR 760 (1994). Allí nos tocó resolver si un emplazamiento era ineficaz porque no se incluyó junto con la copia de la demanda, copia de sus correspondientes anejos (_exhibits_). En esa ocasión dijimos:

> [D]e ordinario, el no entregar copia de los anejos correspondientes a una demanda al momento de diligenciar el emplazamiento no lo hace ineficaz o nulo, ni priva al tribunal de la jurisdicción que de otra forma tendría sobre la persona emplazada. Si de la copia de la demanda sin sus anejos surgen con suficiente claridad los hechos en que se fundamenta la causa de acción, en particular el derecho y el remedio reclamados por el demandante, se cumple con el requisito de entregar copia de la demanda

El estudio de las Reglas de Procedimiento Civil que conciernen al emplazamiento y su jurisprudencia interpretativa nos obliga a concluir que si bien en materia del emplazamiento se requiere, como norma general, un cumplimiento estricto con los requisitos exigidos, el objetivo principal es que se notifique al demandado que se instó una acción judicial en su contra, de manera que se le dé una oportunidad de ser oído y defenderse.

En la controversia de autos no cabe hablar de que se menoscabó el derecho al debido proceso de ley del Hon. Romero Lugo. La entrega personal del escrito, junto a la Orden de mostrar causa, le brindó al Hon. Romero Lugo una notificación adecuada de la existencia de una acción en su contra, de modo que pudiera comparecer y defenderse. Esta notificación garantizó a los peticionados su debido proceso de ley, toda vez que les dio **notificación precisa** sobre lo alegado y solicitado en el escrito de impugnación y de los requerimientos del tribunal primario dispuestos en la Orden de mostrar causa. Con ello, se cumplieron las disposiciones del Art. 10.15 del Código Electoral, <u>supra</u>, y las Reglas de Procedimiento Civil, <u>supra</u>. Para efectos prácticos, aquí se emplazó

---

al emplazar, exigido por las Reglas 4.4 y 4.5 de Procedimiento Civil. <u>Íd</u>., pág. 765.

personalmente, pero sin el inaplicable formulario 1721 de OAT.[7]

V

En conclusión, entiendo que no procedía la desestimación de la acción por falta de jurisdicción *in personam*, ya que el Hon. Romero Lugo fue debidamente notificado de la acción de impugnación de elección, conforme lo dispone el Código Electoral y las Reglas de Procedimiento Civil. Por consiguiente, no hay razón para intervenir con el dictamen del Tribunal de Apelaciones.

Por último, estas expresiones se limitan exclusivamente al aspecto procesal ante nuestra consideración. Le corresponde al Tribunal de Primera Instancia pasar juicio sobre la procedencia de la acción de impugnación y los méritos, si alguno, de las presuntas irregularidades que dieron margen a la impugnación de la elección del Alcalde de San Juan.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

---

[7] Esto hace innecesario discutir la validez del emplazamiento diligenciado al Director de la Oficina de Asuntos Legales del Municipio de San Juan. Sobre la aplicación de la Regla 68 de Procedimiento Civil, 32 LPRA Ap. V, me expresé en Díaz Vanga v. CEE II, 195 DPR 390 (2016) (Voto particular disidente, al cual se unió el Juez Asociado señor Feliberti Cintrón). Esta regla aplica para computar los términos que no vencen en una fecha específica y cuando la ley electoral no indica expresamente cómo se computarán los términos.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Manuel Antonio Natal Albelo, en su capacidad de candidato a la Alcadía de San Juan por el Movimiento Victoria Ciudadana<br><br>Recurrido<br><br>v.<br><br>Miguel A. Romero Lugo, en su capacidad de candidato impugnado y otros<br><br>Peticionarios | AC-2021-0027 cons. con AC-2021-0028 | |

Voto particular de conformidad emitido por el Juez Asociado señor ESTRELLA MARTÍNEZ al cual se unen la Jueza Presidenta ORONOZ RODRÍGUEZ y el Juez Asociado señor KOLTHOFF CARABALLO.

En San Juan, Puerto Rico, a 3 de marzo de 2021.

Consecuentemente la Asamblea Legislativa ha descartado la formalidad del emplazamiento, requiriendo que un candidato o una candidata que desee impugnar una elección diligencie personalmente una **notificación** de su escrito dentro del término de cinco (5) días a la parte impugnada. Por esta razón, hoy estoy conforme de que este Tribunal no haya añadido indebidamente elementos incompatibles con el proceso electoral en sí. Máxime cuando en ninguna parte del anterior y del vigente Código Electoral se impone el riguroso mecanismo del emplazamiento de la Regla 4.4 de Procedimiento Civil, infra.

De igual forma, estoy conforme de que hayamos rechazado adoptar una interpretación errada e incoherente, en la que se proponía imponer el requisito de emplazar en un brevísimo término, pero al mismo tiempo ignorar la Regla 68.1 de Procedimiento Civil, *infra*, lo cual acarrea una reducción irrazonable al plazo para el diligenciamiento de dicha notificación y, con ello, una potencial violación al debido proceso de ley del candidato impugnante.

En ese sentido, es correcto en derecho que se mantenga en vigor el dictamen del Tribunal de Apelaciones, toda vez que no se aparta del mandato y de la intención legislativa de que, en determinadas controversias y debido a la celeridad y agilidad con que éstas deben tramitarse, se utilice el mecanismo de la notificación en lugar del emplazamiento para adquirir jurisdicción sobre la persona del demandado. Ante ese cuadro, de conformidad con el Artículo 10.15 del Código Electoral, *infra*, el Tribunal de Primera Instancia adquirió jurisdicción sobre el candidato impugnado mediante el mecanismo procesal de la notificación y, por lo tanto, no era necesario un emplazamiento.

Con ello en mente, procedemos a exponer brevemente el trasfondo fáctico y procesal de la controversia. Veamos.

I

El 14 de enero de 2021, el Lcdo. Manuel A. Natal Albelo (licenciado Natal Albelo), candidato a la Alcaldía de San Juan por el partido Movimiento Victoria Ciudadana, presentó una impugnación de elección al amparo del Artículo 10.15 del Código Electoral de Puerto Rico de 2020, infra. El licenciado Natal Albelo impugnó la elección del Lcdo. Miguel A. Romero Lugo (licenciado Romero Lugo) como Alcalde de San Juan debido a alegadas irregularidades en la Unidad 77, las cuales, según adujo, son suficientes para cambiar el resultado de la elección. Por tal razón, solicitó que se ordenara una nueva elección para la Alcaldía de San Juan, limitada únicamente a la Unidad 77.

Al siguiente día, el 15 de enero de 2021, el foro de primera instancia emitió una orden de mostrar causa en la que le concedió a las partes hasta el 21 de enero de 2021 para exponer las razones por las cuales no debía conceder el remedio solicitado. Asimismo, ordenó la notificación y el diligenciamiento del recurso de conformidad con la Regla 4.4 de Procedimiento Civil, infra.

El 20 de enero de 2021, el licenciado Natal Albelo acreditó su cumplimiento con lo ordenado por el foro de primera instancia y aseguró haber incluido los emplazamientos diligenciados de todos los peticionarios. No obstante, el foro primario ordenó al licenciado Natal Albelo a presentar copia del diligenciamiento de los emplazamientos, puesto que el documento que éste proveyó

sólo evidenciaba el diligenciamiento de la orden de mostrar causa.

En cumplimiento con lo ordenado, el licenciado Natal Albelo presentó una moción informativa en la cual explicó que, por error e inadvertencia, acreditó haber diligenciado el emplazamiento "cuando debió indicar en su moción que el **diligenciamiento** fue de la Orden de Mostrar Causa y **del recurso de impugnación con todos sus anejos**". (Énfasis suplido).[8] En atención a ello, el 21 de enero de 2021, el licenciado Natal Albelo presentó una moción en la que acreditó que ese mismo día le sirvió copia del emplazamiento y, **por segunda ocasión**, copia del recurso de impugnación a todas las partes, incluyendo al licenciado Romero Lugo.

Posteriormente, el licenciado Romero Lugo presentó su correspondiente moción de desestimación. En lo que nos atañe, el licenciado Romero Lugo arguyó que el recurso de impugnación debía ser desestimado, dado a que el Tribunal de Primera Instancia carecía de jurisdicción en cuanto a su persona por éste no haber sido emplazado dentro del término de cinco (5) días establecido en el Artículo 10.15 del Código Electoral, _infra_. Particularmente, planteó que dicho término era uno específico por lo que,

---

[8] Apéndice de _certiorari_, _Moción informativa para aclarar el récord_, pág. 143. El licenciado Natal Albelo añadió, además, que **la orden de mostrar causa y el recurso de impugnación fueron diligenciados al licenciado Romero Lugo por primera vez el 17 de enero de 2021 y, a las demás partes, el 19 de enero de 2021.** A su vez, destacó que cada uno de los comisionados electorales del Partido Popular Democrático, Partido Independentista Puertorriqueño, Movimiento Victoria Ciudadana y Proyecto Dignidad, renunciaron al diligenciamiento por conducto de sus respectivos representantes legales. Íd., pág. 144.

de conformidad con el Artículo 2.4 del Código Electoral, infra, no le aplicaban las Reglas de Procedimiento Civil. Como consecuencia de lo anterior, señaló que la Regla 68.1 de Procedimiento Civil, infra, no podía tomarse en consideración al computarse dicho término.

Por su parte, el licenciado Natal Albelo presentó su oposición a la correspondiente moción de desestimación. Específicamente, señaló que el escrito de impugnación con todos sus anejos fue notificado debidamente al licenciado Romero Lugo, por primera vez, mediante entrega personal el 17 de enero de 2021, o sea, dentro del término de cinco (5) días. El licenciado Natal Albelo adujo que tal diligenciamiento de la orden de mostrar causa junto con el escrito de impugnación constituyó la notificación adecuada exigida por el Artículo 10.15 del Código Electoral, infra, por lo que el foro de primera instancia sí había adquirido jurisdicción sobre la persona del licenciado Romero Lugo. Además, alegó que la orden de mostrar causa apercibía al licenciado Romero Lugo del término que éste tenía para responder. Asimismo, expresó que, a pesar de que la notificación diligenciada el 17 de enero de 2021 fue conforme a derecho, el posterior emplazamiento también fue realizado correctamente y dentro del término, por no contarse el sábado, domingo ni el lunes, este último por ser un día de fiesta legal. Lo anterior, de conformidad con la Regla 68.1 de Procedimiento Civil, infra.

Eventualmente, el Tribunal de Primera Instancia dictó sentencia. El foro primario concluyó que el plazo de cinco (5) días para realizar la notificación era uno jurisdiccional al que no le aplicaba la Regla 68.1 de Procedimiento Civil, infra. Siendo ello así, estableció que el término para diligenciar el emplazamiento venció el 19 de enero de 2021. Particularmente, determinó que el emplazamiento diligenciado el 21 de enero de 2021 al licenciado Romero Lugo fue realizado fuera del término. En consecuencia, desestimó el recurso por entender que el emplazamiento se diligenció siete (7) días después de presentada la demanda de impugnación.

Inconforme, el licenciado Natal Albelo acudió al Tribunal de Apelaciones y, en esencia, señaló que el Tribunal de Primera Instancia erró al: (1) no distinguir entre el procedimiento especial del Código Electoral para la notificación de recursos de impugnación y la rigurosidad del emplazamiento exigida por las Reglas de Procedimiento Civil, e (2) invalidar el posterior emplazamiento por concluir que al cómputo del término del diligenciamiento no le aplicaban las Reglas de Procedimiento Civil. Por su parte, el licenciado Romero Lugo fundamentó su oposición en que la interpretación propuesta por el licenciado Natal Albelo atenta contra las normas del debido proceso de ley que reconocen el emplazamiento como exigencia procesal que permite al

tribunal adquirir jurisdicción sobre la persona del demandado.

Posteriormente, el Tribunal de Apelaciones emitió una sentencia en la que revocó al foro de primera instancia. En esencia, concluyó que la impugnación de la elección al amparo del Artículo 10.15 del Código Electoral, _infra_, no requería la utilización del mecanismo del emplazamiento para adquirir jurisdicción sobre la persona, sino que bastaba con la notificación del escrito de impugnación mediante entrega personal. Adujo que un análisis de lo anterior, en conjunto con la brevedad de los plazos que surgen del referido precepto legal, demuestra la intención de la Asamblea Legislativa de simplificar el proceso de notificación a los fines de agilizar la tramitación de la causa de acción.

En desacuerdo, el licenciado Romero Lugo y la Comisionada Electoral del Partido Nuevo Progresista acuden ante nos y señalan que el Tribunal de Apelaciones erró al concluir que en una impugnación de elección no es necesario el emplazamiento y que, en consecuencia, bastaba con la notificación personal del recurso presentado. El licenciado Romero Lugo argumenta que el dictamen del foro apelativo intermedio no puede tener el efecto de que, por fíat judicial, se deje sin efecto el formulario preparado por la Oficina de Administración de Tribunales para la expedición de emplazamientos. En cuanto a lo anterior, señala que el diligenciamiento

dispuesto al dorso de la orden de mostrar causa no es suficiente para que un tribunal adquiera jurisdicción sobre su persona. Ello, pues, éste, a diferencia del formulario de emplazamiento, es más simple y carece de datos adicionales que deben ser completados por el diligenciante, tales como el requerimiento que detalla la forma en que fue entregado el emplazamiento.

Luego de haber concedido tiempo a las partes para que presentaran sus correspondientes alegatos, oportunamente, el licenciado Natal Albelo comparece ante nos y reitera que el foro apelativo intermedio actuó correctamente al concluir que la notificación realizada el 17 de enero de 2021 al licenciado Romero Lugo, mediante la cual se le diligenció una orden de mostrar causa en conjunto con el escrito de impugnación, cumple con lo ordenado por el Artículo 10.15 del Código Electoral, infra. Además, insiste en que sería un error hermenéutico aplicar la rigidez exigida por el mecanismo del emplazamiento de las Reglas de Procedimiento Civil y, a su vez, no reconocer la aplicabilidad de la Regla 68.1 de Procedimiento Civil, infra.

Tras ponderar las posturas de los licenciados Romero Lugo y Natal Albelo, así como la del Presidente de la Comisión Estatal de Elecciones y la de las y los comisionados electorales del Partido Nuevo Progresista, Partido Popular Democrático y Movimiento Victoria Ciudadana, este Tribunal opta por denegar el recurso

acogido como <u>certiorari</u> y, con ello, se mantiene en vigor el dictamen del Tribunal de Apelaciones, el cual revirtió la desestimación por falta de jurisdicción sobre la persona realizada por el Tribunal de Primera Instancia.

Repasados los hechos esenciales, procedo a exponer los fundamentos de mi conformidad.

**II**

**A.**

Como es conocido, con la aprobación del nuevo Código Electoral de Puerto Rico de 2020, Ley Núm. 58-2020, 16 LPRA sec. 4501, <u>et seq.</u> (Código Electoral) se reformuló gran parte de nuestro ordenamiento electoral. No obstante, el proceso de impugnación de elección **permaneció inalterado**, pues mantuvo un lenguaje similar al procedimiento de impugnación de elección bajo el código electoral predecesor.[9]

Actualmente, el Artículo 10.15 del Código Electoral establece que la parte que impugna una elección deberá presentar "dentro de los diez (10) días siguientes a la fecha de notificación de la certificación de elección para cada cargo público electivo en el escrutinio general, un escrito, exponiendo bajo juramento las

---

[9]Para un análisis comparativo del Código Electoral 2020 y su predecesor, véase <u>Código Electoral 2020 comparado con el Código Electoral 2011</u>, Lorena Matos Cáez, Puerto Rico Constitution Center, https://constitutionpr.com/category/leyes-comparadas/ .

razones en que fundamenta su impugnación. . .". 16 LPRA sec. 4765.

Acto seguido, el precitado artículo precisa la forma en que deberá notificarse la presentación del escrito de impugnación, al disponer que:

> **Una copia fiel y exacta del escrito de impugnación será notificada al Candidato impugnado y se le entregará personalmente, dentro de los cinco (5) días siguientes a su presentación.**
> El Candidato cuya elección fuese impugnada, tendrá que presentar ante el Tribunal una contestación bajo juramento, dentro de los diez (10) días siguientes a la fecha en que recibiere la notificación del escrito de impugnación y certificará haber notificado y entregado personalmente copia de su contestación al impugnador o a su representante legal. Se entenderá que la persona cuya elección fue impugnada acepta la impugnación como cierta de no contestar en dicho término. (Énfasis suplido). Íd.

De lo anterior, se puede colegir que el Código Electoral requiere que: (1) la impugnación sea notificada mediante la entrega personal de copia exacta del escrito de impugnación juramentado; (2) esta notificación debe realizarse dentro del término de cinco días; (3) la persona impugnada deberá contestar, notificar y entregar personalmente copia de su contestación a quien le impugnó dentro de los diez días siguientes, y, por último, (4) si la persona impugnada no contesta dentro de este término, acepta la impugnación como cierta.

El Artículo 10.15 del Código Electoral precisa, además, que:

> La notificación, escrito y contestación prescritos en esta Ley, podrán ser

diligenciados por cualquier persona competente para testificar y se diligenciarán mediante entrega personal a las respectivas partes, a sus representantes electorales, conforme a lo establecido en las Reglas de Procedimiento Civil **o en la residencia u oficina de la persona a quien fueren dirigidas. . ..** (Énfasis suplido). Íd.

**Nótese que, distinto a diversas leyes que establecen el mecanismo del emplazamiento para adquirir jurisdicción sobre la persona, el Código Electoral solamente hace referencia a una notificación.** Ante esto, resultaría incorrecto cambiar unilateralmente el estado de derecho y pautar que el mecanismo de notificación, por sí solo, es insuficiente para adquirir jurisdicción sobre la persona del candidato impugnado en cuestión. Ello hubiese conducido a este Tribunal a apartarse de las propias Reglas de Procedimiento Civil, de las disposiciones del Código Electoral y de los principios de hermenéutica que imperan en nuestro ordenamiento jurídico. Veamos.

**B.**

No existe duda de que el emplazamiento es uno de los actos procesales mediante el cual se comunica a la parte demandada en cuanto a la existencia de una reclamación presentada en su contra. <u>Bernier González v. Rodríguez Becerra</u>, 200 DPR 637, 644 (2018); <u>Torres Zayas v. Montano Gómez</u>, 199 DPR 458, 467 (2017). Como bien precisó el profesor Rafael Hernández Colón, el mecanismo del emplazamiento tiene los siguientes efectos procesales: (1) constituye la relación procesal comunicativa de la acción judicial presentada contra la parte demandada; (2)

otorga jurisdicción al tribunal sobre la persona del demandado, y (3) confiere al actor el derecho de pedir la anotación de rebeldía, y a obtener sentencia en su día, si la parte no comparece dentro del término concedido. R. Hernández Colón, Práctica Jurídica de Puerto Rico: Derecho Procesal Civil, 6ta ed. San Juan, Ed. Lexisnexis, 2010, sec. 2002, pág. 258.

Una vez emplazado correctamente, el tribunal adquiere jurisdicción sobre la persona, se activan las garantías del debido proceso de ley y la parte demandada podrá comparecer al juicio, ejercer su derecho a ser oído y presentar prueba a su favor. Bernier González v. Rodríguez Becerra, supra, pág. 644; Torres Zayas v. Montano Gómez, supra, pág. 467.

Ahora bien, el emplazamiento no es el único mecanismo procesal reconocido que cumple con la función de otorgar jurisdicción sobre la persona del demandado. En ese sentido, nuestro ordenamiento jurídico reconoce el mecanismo de la notificación como uno suficiente y alterno al emplazamiento en circunstancias particulares.

A modo de ejemplo, la Regla 60 de Procedimiento Civil, 32 LPRA Ap. V, en el contexto de reclamaciones de cobro de dinero, establece un mecanismo de notificación-citación flexible alterno al emplazamiento.[10] En lo que nos concierne, la diferencia entre estos mecanismos

---

[10]Mediante esta notificación-citación, además de notificarle a la parte demandada que se ha instado una reclamación en su contra, se le cita para la correspondiente vista judicial. Asoc. Res. Colinas Metro v. SLG, 156 DPR 88, 98 (2002).

procesales, según interpretado por el tratadista José A. Cuevas Segarra, estriba en que, **"bajo la Regla 60 se expide una notificación-citación y no un emplazamiento"**. (Énfasis suplido). J. A. Cuevas Segarra, <u>Tratado de Derecho Procesal Civil</u>, 2da ed., San Juan, Pubs. JTS, 2011, T. V, pág. 1803 (2017). Sin embargo, la identidad de propósitos y el efecto es similar: que los tribunales adquieran jurisdicción sobre la persona del demandado.

En contraste a un procedimiento ordinario en el cual se requiere la expedición de un emplazamiento, la flexibilidad del mecanismo de la notificación, y del procedimiento de la Regla 60 en sí mismo, se debe a la intención de la Asamblea Legislativa en promover la agilidad procesal en la tramitación de estas causas, así como el acceso a los tribunales y una justicia más justa y económica. <u>Primera Cooperativa de Ahorro v. Hernández v. Hernández</u>, 2020 TSPR 127. Precisamente, iguales aspiraciones permean en el Derecho Electoral.

Debido a la existente relación de identidad entre ambos mecanismos, la Regla 60, <u>supra</u>, de modo similar al tradicional emplazamiento, requiere que la notificación cumpla con los siguientes requisitos: (1) se diligencie mediante entrega personal o por correo certificado junto con copia de la demanda; (2) se realice dentro del plazo de diez días; (3) incluya la fecha señalada para la vista en su fondo, y (4) contenga una advertencia a la parte demandada de que en la vista deberá exponer su posición

respecto a la reclamación y, que si no comparece, podrá dictarse sentencia en rebeldía en su contra. Primera Cooperativa de Ahorro v. Hernández v. Hernández, supra.

Lo anterior evidencia que la Asamblea Legislativa ha contemplado otros escenarios en los cuales, en lugar de la utilización del tradicional emplazamiento, sólo se requiere el diligenciamiento de una notificación para que se adquiera jurisdicción sobre la persona del demandado y se activen las garantías del debido proceso de ley.

Tal es el caso de la impugnación de elección de conformidad con el Artículo 10.15 del Código Electoral, supra.

### III

Como mencionamos, el licenciado Natal Albelo presentó un recurso de impugnación de elección en contra del licenciado Romero Lugo, de conformidad con el Artículo 10.15 del Código Electoral, supra. El escrito de impugnación juramentado, junto con todos sus anejos y con una copia de la orden de mostrar causa, fue diligenciado el 17 de enero de 2021, tres (3) días después de haberse presentado la impugnación y dentro del término de cinco (5) días exigido por el Código Electoral.

Más adelante, a pesar de no ser requerido por el Artículo 10.15 del Código Electoral, supra, específicamente el 21 de enero de 2021, el licenciado Romero Lugo fue emplazado, según ordenado erróneamente por el foro de primera instancia. Entretanto, desde el 21

y hasta el 27 de enero de 2021, el licenciado Romero Lugo presentó tres (3) mociones de desestimación bajo el fundamento de que no había sido emplazado conforme a derecho y, por tanto, no había jurisdicción sobre su persona. Debido a lo anterior, el tribunal de instancia desestimó la impugnación al resolver que no se emplazó al candidato impugnado dentro del término de cinco (5) días. Además, concluyó que la Regla 68.1 de Procedimiento Civil, _supra_, no aplicaba al cómputo del término de dicho emplazamiento. En cambio, el foro apelativo intermedio, acertadamente, revocó al foro de primera instancia al determinar que el Artículo 10.15 del Código Electoral, _supra_, solamente exige una notificación personal del escrito de impugnación y no el tradicional emplazamiento.

Ante ese cuadro, a pesar de que el Artículo 10.15 del Código Electoral, _supra_, sólo requiere una **notificación** del escrito de impugnación, se nos invita a pautar que no basta con dicha notificación y que es obligatorio seguir las formalidades del emplazamiento contemplado en la Regla 4.4 de Procedimiento Civil, _supra_.

Tal contención conllevaría ignorar que la Asamblea Legislativa, claramente, omitió el requerimiento del emplazamiento en el Artículo 10.15 del Código Electoral, _supra_, y, en su lugar, estableció que el mecanismo procesal a utilizarse para adquirir jurisdicción sobre la

persona en una impugnación de elección sería la notificación.

El Código Electoral supedita la impugnación de una elección a una serie de requisitos procesales, los cuales comienzan con la manera en que se diligenciará la notificación del escrito de impugnación juramentado y su correspondiente contestación. El mecanismo especial de la notificación dispuesto en esta ley es cónsono con la flexibilidad y agilidad con la que debe tramitarse este procedimiento judicial de impugnación de elección bajo el Código Electoral, _supra_. Nada en el historial legislativo de la ley indica que es un requisito que la parte impugnante solicite la expedición o el diligenciamiento de un emplazamiento al candidato impugnado. Por el contrario, la Asamblea Legislativa, teniendo en consideración la premura con la que se requiere que se tramite esta controversia electoral, en lugar de plasmar en el Código Electoral la norma inflexible de que la parte impugnante expida y diligencie un emplazamiento, tan sólo requirió que el escrito de impugnación fuese notificado.

Por ello, concluir en este contexto que una notificación no otorga jurisdicción sobre la persona y que, por tanto, es requerido un emplazamiento, es incorrecto. Máxime cuando, como vimos en el contexto de la Regla 60, _supra_, las propias Reglas de Procedimiento Civil contemplan un mecanismo procesal flexible que se

aparta de la rigidez característica de un emplazamiento, a saber: la notificación.

La notificación como mecanismo alterno al emplazamiento es cónsona con el debido proceso de ley pues, tal y como expresa el profesor Hernández Colón, el propósito del emplazamiento es cumplir con tres requisitos básicos, a saber: (1) comunicar a la parte afectada que se ha entablado una acción judicial en su contra; (2) otorgar jurisdicción al tribunal sobre la parte afectada, y (3) garantizar a la parte actora que pueda pedir la anotación de rebeldía si la parte demandada no comparece dentro del término concedido y a obtener sentencia en su día. Hernández Colón, op cit., pág. 258.

En este caso, con la notificación y el diligenciamiento del escrito de impugnación y de la orden de mostrar causa realizado por el licenciado Natal Albelo, el Tribunal de Primera Instancia adquirió jurisdicción sobre la persona del licenciado Romero Lugo; éste quedó advertido de que se había presentado una impugnación de elección en su contra y, a su vez, se le informó que, si no comparecía dentro del término concedido, el foro primario procedería a conceder los remedios solicitados sin más citarle ni oírle. Claramente, con esta notificación se activaron las garantías del debido proceso de ley del licenciado Romero Lugo y, con ello, su derecho a comparecer al juicio, a

ejercer su derecho a ser oído y presentar prueba a su favor.

A pesar de garantizársele el debido proceso de ley al licenciado Romero Lugo con el diligenciamiento de una notificación del escrito de impugnación, un sector de este Tribunal obvia esa realidad y con ello también ignora el axioma de fuerte arraigo en nuestro sistema judicial que garantiza que "el nombre no hace la cosa". OCS v. CODEPOLA, 202 DPR 842, 880 (2019) (citas omitidas). Así, aunque el Artículo 10.15, supra, sólo requiere el diligenciamiento de una **notificación** del escrito de impugnación, las partes peticionarias pretenden ignorarlo como si ésta fuera ajena a nuestro sistema de derecho, y proponen que este Tribunal la sustituya por el mecanismo del emplazamiento.

Aun si partiéramos de la premisa que el mecanismo procesal para adquirir jurisdicción sobre la persona del licenciado Romero Lugo era el emplazamiento de las Reglas de Procedimiento Civil, lo cual negamos, este Tribunal no podría excluir la aplicación de la Regla 68.1 de Procedimiento Civil, supra, al computar el término de cinco (5) días para el diligenciamiento de tal emplazamiento. En ese sentido, llegaríamos al mismo resultado. Ello pues, no puedo avalar el pretexto de que dicho término es uno específico y que, de conformidad con el Artículo 2.4 del Código Electoral, 16 LPRA sec. 4504, las Reglas de Procedimiento Civil no aplican a aquellos

términos específicos dispuestos en dicha ley. Me explico.

El referido artículo de la ley especial establece la norma general de que "[e]l cómputo de los **términos expresados** en [el Código Electoral] se aplicará según las Reglas de Procedimiento Civil. . ..". (Énfasis suplido). Íd. Acto seguido, el Artículo 2.4 detalla que, como excepción a la norma general, las precitadas reglas procesales no aplicarán en "aquellos **términos específicos** dispuestos en [el Código Electoral]". (Énfasis suplido). Íd. Claramente, nuestra interpretación de esa normativa debe ir dirigida a reconocer la aplicación de las reglas procesales, como norma general, en los "términos expresados" en el estatuto y, a modo de excepción, reconocer su inaplicabilidad cuando medien "términos específicos".

Sin embargo, el Código Electoral no define qué son "términos específicos". Ante esa disyuntiva, nos corresponde armonizar de manera integral el Código Electoral. Esto, de modo que prevalezca la norma general expresamente codificada en el Código Electoral en cuanto a la aplicabilidad de las Reglas de Procedimiento Civil para el cómputo de los términos ordinariamente expresados -como el que nos ocupa- y que no sucumbiera ante la excepción de la aplicabilidad de dichas reglas procesales sólo en determinadas instancias. Máxime cuando, inequívocamente, la Asamblea Legislativa dispuso que las

fechas ciertas con carácter fatal fueran la excepción a la regla general.

Por tanto, resulta indispensable no ignorar la aplicación del principio fundamental de hermenéutica legal que nos exige que, en el ánimo de cumplir con el propósito perseguido por la Asamblea Legislativa, los tribunales estamos obligados a "armonizar, en la medida posible, todas las disposiciones de ley involucradas en aras de obtener un resultado más sensato, lógico y razonable". Romero Lugo v. Cruz Soto, 2020 TSPR 143 (citas omitidas). Resolver lo contrario, ignoraría los más básicos preceptos hermenéuticos y conduciría a la paradoja de requerir el mecanismo procesal riguroso del emplazamiento según dispuesto en la Regla 4.4 de Procedimiento Civil, supra, mientras que, al mismo tiempo, excluiría la aplicación de la Regla 68.1 de Procedimiento Civil, supra, al momento de determinar cómo debe computarse el plazo de dicho emplazamiento, a pesar de encontrarnos ante un brevísimo término.[11]

Si tomamos en cuenta el contexto particular en el que se desarrolló este caso, avalar el razonamiento del foro primario, hubiese tenido consecuencias

---

[11]La Regla 68.1 de Procedimiento Civil, supra, dispone que:

[E]n **el cómputo de cualquier término concedido por estas reglas, o por orden del tribunal o por cualquier estatuto aplicable**, no se contará el día en que se realice el acto, evento o incumplimiento después del cual el término fijado empieza a transcurrir. [...] **Cuando el plazo concedido sea menor de siete (7) días, los sábados, domingos o días de fiesta legal intermedios se excluirán del cómputo. . . .**

potencialmente nefastas para la adecuada administración de la justicia. Veamos.

El escrito de impugnación aquí en controversia se presentó el jueves, 14 de enero de 2021. Así, el primer día del término de cinco (5) días dispuesto en el Código Electoral fue el viernes, 15 de enero de 2021. Ahora bien, dado que el dictamen del foro de primera instancia excluyó la aplicabilidad de la Regla 68.1 de Procedimiento Civil, supra, se incluyen en el cómputo el sábado 16, el domingo 17 y el lunes, 18 de enero de 2021, a pesar de que este último fue un día de fiesta legal. Por tanto, el quinto día del referido plazo se cumplió el martes, 19 de enero de 2021. Como puede verse, el término original de cinco (5) días para el diligenciamiento de la **notificación** se agravaría con el mecanismo del emplazamiento y, por si fuera poco, se reduciría drásticamente a un término irrazonablemente corto de dos (2) días hábiles o laborables.

Mediante este automatismo, se ignoraría la potencial violación al debido proceso de ley del licenciado Natal Albelo al concederle el irrazonable término de tan sólo dos (2) días para que diligenciara el emplazamiento ahora exigido. Ello, pues como hemos sostenido antes:

> **[V]iola el debido proceso de ley un estatuto que, en su aplicación, convierte en irrisorio el remedio solicitado al operar en un período de tiempo tan corto que no le brinda a la parte perjudicada una oportunidad razonable para ejercitar la acción.** [. . .] Ello es así, ya que se reconoce que **el derecho de ejercitar**

**la acción civil es un derecho fundamental** cuya restricción, por parte del Estado, debe estar fundamentada en un interés apremiante promovido por el medio menos oneroso. (Énfasis suplido). <u>Calo Morales v. Cartagena Calo</u>, 129 DPR 102, 138 (1991) (citas omitidas).

Ciertamente, el dictamen revocado por el Tribunal de Apelaciones era contrario a la intención de la Asamblea Legislativa, ya que restringía el mecanismo flexible de la notificación por la rigurosidad que caracteriza el emplazamiento y, por si fuera poco, prohibía que el cómputo del término se realizara de conformidad con la Regla 68.1 de Procedimiento Civil, <u>supra</u>. Esto, como vimos, tenía el efecto de limitar a tan solo dos (2) días el plazo para el diligenciamiento del emplazamiento con las potenciales violaciones al debido proceso de ley que ello acarrea.

La controversia en este caso era simple debido a la relación de identidad entre ambos mecanismos. Es inexistente la distinción si tomamos en consideración el propósito y los efectos de una notificación <u>vis á vis</u> el emplazamiento como métodos para adquirir jurisdicción sobre la persona.

Al considerar que el método de notificación dispuesto en esta ley fue especial, en sintonía con el propósito del Código Electoral y la premura que urge al resolver este tipo de casos, el curso de acción tomado es el correcto. Como cuestión de derecho, correspondía que validáramos que la primera notificación realizada el 17 de enero de 2021, tan solo tres (3) días después de

haberse presentado el escrito de impugnación y dentro del plazo de cinco (5) días exigido, fue realizada conforme a lo requerido por el Art. 10.15 del Código Electoral, supra. Aun bajo la errada aplicación del mecanismo procesal del emplazamiento, los propulsores de esa teoría deben reconocer que el emplazamiento realizado por el licenciado Natal Albelo el 21 de enero de 2021, luego de computarse el plazo de cinco (5) días de conformidad con la Regla 68.1 de Procedimiento Civil, supra, fue realizado dentro del término y, por tanto, el Tribunal de Primera Instancia sí adquirió jurisdicción sobre la persona del licenciado Romero Lugo.

Sólo así cumplimos con nuestro deber de realizar una interpretación armoniosa de la ley y salvaguardaríamos el debido proceso de ley de todas las partes.

## IV

Por entender que el Artículo 10.15 del Código Electoral, supra, sólo exige el mecanismo procesal de la notificación para adquirir jurisdicción sobre la persona del candidato impugnado, estoy conforme con el dictamen del Tribunal de Apelaciones.


Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Manuel Antonio Natal Albelo,
en su capacidad de candidato a
la Alcaldía de San Juan por el
Movimiento Victoria Ciudadana

    Recurrido

      v.

Miguel A. Romero Lugo, en su
capacidad de candidato impugnado
y otros

    Peticionarios

AC-2021-027
Cons. con
AC-2021-028

Voto Particular de Conformidad emitido por el Juez Asociado
señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 3 de marzo de 2021.

Estamos conforme con el curso de acción seguido por una Mayoría de este Tribunal en el presente caso, ello por entender que -- en lo relacionado a la causa de epígrafe -- ha quedado claramente demostrado lo siguiente: 1) que la demanda de *Impugnación de elección* objeto del presente litigio, e incoada por el licenciado Manuel A. Natal Albelo, se notificó al aquí peticionario, Hon. Miguel A. Romero Lugo, dentro del término de cinco (5) días dispuesto para ello en el Art. 10.15 del Código Electoral de 2020, *infra*; 2) que habiendo recibido copia de la demanda, el Hon. Miguel A. Romero Lugo fue informado oportunamente de la acción judicial presentada en su contra, garantizándole así su derecho a ser oído y a que presentase prueba a su

favor; y 3) que, realizado dicho procedimiento, se salvaguardó el debido proceso de ley que le asiste al Hon. Miguel A. Romero Lugo. Siendo ello así, este caso se mantiene vivo y le corresponde al Tribunal de Primera Instancia atenderlo en los méritos. Veamos.

## I.

Allá para el **14 de enero de 2021**, el licenciado Manuel A. Natal Albelo (en adelante, "licenciado Natal Albelo") -- como candidato a la Alcaldía de San Juan por el partido Movimiento Victoria Ciudadana -- incoó una demanda de *Impugnación de elección*, al amparo del Art. 10.15 del Código Electoral de Puerto Rico de 2020, *infra*, (en adelante, "Código Electoral de 2020"), en la cual cuestionó la elección del Hon. Miguel A. Romero Lugo como Alcalde del referido Municipio. Dicho recurso se fundamentó en la existencia de presuntas irregularidades relacionadas al manejo, custodia y adjudicación de las papeletas municipales correspondientes a la Unidad Electoral 77 del Municipio de San Juan. En consecuencia, el licenciado Natal Albelo solicitó al Tribunal de Primera Instancia que ordenara la celebración de una nueva elección limitada a la mencionada Unidad Electoral.

Recibida la referida demandada, al día siguiente, -- entiéndase, el 15 de enero de 2021, -- el foro primario emitió una *Orden de mostrar causa* en la cual expuso que:

> [C]onsiderada la naturaleza extraordinaria del presente recurso, el peticionario deberá diligenciar, y además notificar esta orden con copia del recurso y sus anejos a todos los peticionados, de conformidad a lo dispuesto en la Regla 4.4 de Procedimiento Civil [,] en las

próximas 24 horas de su expedición. (Énfasis y citas omitidas).

De igual forma, mediante la referida *Orden*, se le concedió al Hon. Miguel A. Romero Lugo y demás peticionados hasta el 21 de enero de 2021 para exponer las razones por las cuales no se debía conceder el remedio solicitado. Además, se les advirtió a estos últimos que, de no contestar dentro del plazo concedido, el tribunal podría acceder al petitorio del licenciado Natal Albelo, sin más oírles.

**Así las cosas, el 17 de enero de 2021 -- es decir, tres (3) días después de haberse presentado la *Impugnación de elección* -- el licenciado Natal Albelo diligenció el escrito de *Impugnación de elección* y sus anejos, así como la *Orden de mostrar causa* emitida por el foro primario, al Hon. Miguel A. Romero Lugo de forma personal. En cuanto a los restantes peticionados, ello ocurrió cinco (5) días después, a saber, el 19 de enero de 2021.**

Tal hecho fue acreditado al Tribunal de Primera Instancia el 20 de enero de 2021, mediante *Moción en cumplimiento de orden*. En dicho escrito, el licenciado Natal Albelo expresó haber acompañado copia de los emplazamientos que diligenció, según ordenado por el foro primario.[12]

---

[12] Cabe señalar que, al día siguiente, el licenciado Natal Albelo presentó una *Moción informativa para aclarar el récord*. En ella, explicó que aunque el día antes había presentado una moción a los efectos de notificar el cumplimiento de orden y acreditar al tribunal el diligenciamiento de la *Orden de Mostrar Causa* -- junto con la petición de *Impugnación de elección* y todos sus anejos -- por error e

En respuesta a lo anterior, el Tribunal de Primera Instancia ordenó a este último a presentar los emplazamientos diligenciados, debido a que -- a su juicio -- solo había incluido evidencia del diligenciamiento de la *Orden de mostrar causa*. Ante ello, y a solicitud del licenciado Natal Albelo, el 21 de enero de 2021 la Secretaría del foro primario expidió los emplazamientos los cuales fueron diligenciados en igual fecha.

Ahora bien, ese mismo día, el Presidente de la Comisión Estatal de Elecciones, Hon. Francisco J. Rosado Colomer, el Comisionado Electoral del Partido Nuevo Progresista, señor Héctor J. Sánchez Álvarez, y el Hon. Miguel A. Romero Lugo presentaron mociones de desestimación, por separado. En ellas, esbozaron un sinnúmero de razones por las cuales entendían que procedía desestimar el recurso presentado ante el Tribunal de Primera Instancia. En lo pertinente, adujeron el incumplimiento con los requisitos para impugnar una elección y la falta de jurisdicción sobre la persona, por no emplazarse dentro del término dispuesto en ley para ello.

Posteriormente, el Hon. Miguel A. Romero Lugo interpuso una segunda moción de desestimación en la que arguyó que el emplazamiento -- según expedido por la Secretaría del foro primario -- no se le entregó personalmente, sino que se diligenció por conducto del Director de la Oficina de Asuntos Legales del Municipio

---

inadvertencia denominó el diligenciamiento de la referida *Orden* y del recurso de impugnación como emplazamientos.

de San Juan. Ello, a pesar de que éste no había sido autorizado para recibir emplazamientos a nombre del candidato impugnado, en su carácter personal. Asimismo, el Hon. Miguel A. Romero Lugo argumentó que conforme al término de cinco (5) días dispuesto en el Art. 10.15 del Código Electoral de 2020, *infra*, el licenciado Natal Albelo tenía hasta el 19 de enero de 2021 para notificarle del recurso incoado ante Tribunal de Primera Instancia y, debido a que los emplazamientos no se diligenciaron a dicha fecha, el tribunal carecía de jurisdicción sobre la persona.

Oportunamente, el licenciado Natal Albelo se opuso a dichas mociones de desestimación y sostuvo haber cumplido con el término de cinco (5) días que contempla la precitada disposición del Código Electoral de 2020, *infra*, pues, notificó copia fiel y exacta del escrito de impugnación dentro de dicho término, lo cual a su entender le confirió al foro primario jurisdicción sobre la persona del Hon. Miguel A. Romero Lugo. Señaló, además, que con posterioridad a ello, diligenció el emplazamiento de conformidad a las exigencias contenidas en las Reglas de Procedimiento Civil, *infra*.

Evaluados los argumentos de las partes en el litigio, el 29 de enero de 2021 el Tribunal de Primera Instancia dictó *Sentencia* en la cual concluyó, en síntesis, que el término para diligenciar el emplazamiento era uno jurisdiccional, y no de cumplimiento estricto, el cual venció el 19 de enero de

2021. En consecuencia, desestimó el recurso de *Impugnación de elección* por entender que el emplazamiento diligenciado el 21 de enero de 2021 se realizó fuera del término dispuesto para ello, privando así al foro primario de jurisdicción.

En otras palabras, del contenido de dicha *Sentencia* se puede colegir que el Tribunal de Primera Instancia entendió necesario no solo la notificación del escrito de *Impugnación de elección* con todos sus anejos -- así como la *Orden* de *mostrar causa* a la cual hemos hecho referencia --, sino también diligenciar los emplazamientos a través de los respectivos formularios a esos fines y cumpliendo también con las Reglas de Procedimiento Civil, *infra*, que contemplan lo anterior. Debido a que esto último se realizó a siete (7) días de haberse incoado la demanda de *Impugnación de elección,* el foro primario concluyó que se incumplió con el término dispuesto en el Art. 10.15 del Código Electoral de 2020, *infra*, por lo que procedía la desestimación del caso de marras.

Insatisfecho con la anterior determinación, el licenciado Natal Albelo acudió ante el Tribunal de Apelaciones mediante recurso de apelación, en donde adujo que el Tribunal de Primera Instancia erró tras concluir que no adquirió jurisdicción sobre la persona a través del cumplimiento con el procedimiento especial de notificación estatuido en el precitado artículo del Código Electoral de 2020, *infra*, y al no distinguir el

mismo del emplazamiento contemplado bajo las Reglas de Procedimiento Civil, *infra*. Como segundo señalamiento de error, arguyó que el foro primario erró al aplicar las Reglas de Procedimiento Civil, *infra*, de forma inconsistente y, consecuentemente, invalidar el posterior emplazamiento del candidato impugnado.

Tras evaluar los alegatos de las partes, el Tribunal de Apelaciones emitió una *Sentencia* mediante la cual revocó al foro primario.[13] En síntesis, el foro apelativo intermedio razonó que el concepto "emplazamiento" no formaba parte del texto del Art. 10.15 del Código Electoral de 2020, *infra*, y, en cambio, dicho articulado sí hacía referencia a la notificación del escrito de impugnación mediante la entrega personal de éste. Así pues, el Tribunal de Apelaciones sostuvo que lo anterior, junto a los breves plazos que provee la referida disposición de ley, hacían evidente la intención del legislador de simplificar el proceso de notificación del recurso a los fines de agilizar la tramitación de este tipo de causa de acción. En consecuencia, el foro apelativo intermedio concluyó que el Tribunal de Primera Instancia adquirió jurisdicción sobre la persona del Hon. Miguel A. Romero Lugo y demás peticionados, ya que, no solo se satisficieron las exigencias del Código Electoral de 2020, *infra*, sino que se les garantizó el debido proceso de ley.

---

[13] El Panel del Tribunal de Apelaciones estuvo integrado por su presidenta, la Jueza Birriel Cardona, el Juez Bonilla Ortiz y la Jueza Cortés González. La Jueza Birriel Cardona disintió sin opinión escrita.

En desacuerdo con lo dictaminado por el Tribunal de Apelaciones, el 19 de febrero de 2021 el Hon. Miguel A. Romero Lugo comparece ante nos mediante "recurso de apelación" en el cual sostiene que el foro apelativo intermedio erró al concluir que en una impugnación de elección bajo el Art. 10.15 del Código Electoral de 2020, *infra*, no es necesario emplazar conforme a la Regla 4.4 de Procedimiento Civil, *infra*, tras razonar que la mera notificación del recurso presentado es suficiente para que el tribunal adquiera jurisdicción *in personam* sobre el candidato impugnado. Así pues, éste aduce que el escrito de *Impugnación de elección* no solo debía notificarse, sino que también correspondía diligenciar los emplazamientos expedidos por la Secretaría del Tribunal utilizando el formulario OAT 1721. Documentos que, a su juicio, se debían diligenciar de forma simultánea dentro del término de cinco (5) días contados a partir de la presentación del recurso de *Impugnación de elección*. Además, el Hon. Miguel A. Romero Lugo arguye que el diligenciamiento de la *Orden de mostrar causa*, por sí solo, no puede tener el efecto de conceder jurisdicción sobre un demandado si éste no es debidamente emplazado con copia de la demanda en su contra, conforme lo exige la Regla 4.4 de Procedimiento Civil, *infra*, y el Art. 10.15 del Código Electoral de 2020, *infra*.

Del mismo modo, comparece ante este Tribunal la Comisionada Electoral del Partido Nuevo Progresista, señora Vanessa Santo Domingo, a través de un "recurso de

apelación" y *Moción de consolidación*, en el cual señala argumentos similares a aquellos esbozados por el Hon. Miguel A. Romero Lugo en su comparecencia. Asimismo, sostiene que el tribunal *a quo* incidió al no expresarse sobre la forma en que se computan los términos provistos en el Código Electoral de 2020, *infra*.

Por su parte, el licenciado Natal Albelo presentó el correspondiente alegato en el que, en apretada síntesis, reitera su postura en cuanto a que el Artículo 10.15 del Código Electoral de 2020, *infra*, requiere únicamente una notificación del recurso de impugnación de elección como mecanismo para adquirir jurisdicción sobre la persona. En la alternativa, argumenta que incluso si se concluyera que este tipo de procedimiento *sui generis* tiene como requisito adicional el diligenciamiento del emplazamiento personal al amparo de la Regla 4.4 de Procedimiento Civil, *infra*, el término aplicable para ello no sería cinco (5) días sino ciento (120) días, cónsono con la Regla 4.3 del referido cuerpo reglamentario.

De igual manera, comparecieron el Presidente de la Comisión Estatal de Elecciones, Hon. Francisco Rosado Colomer; el Comisionado Electoral del Partido Popular Democrático, señor Gerardo A. Cruz Maldonado; y el Comisionado Electoral del partido Movimiento Victoria Ciudadana, señor Olvin Valentín Rivera, mediante sus respectivos alegatos.

Trabada así la controversia, esta Curia proveyó *no ha lugar* a los recursos presentados ante nos. Con ese

curso de acción seguido por una mayoría de este Tribunal, estamos conforme. Explicamos porque.

## II.

Como es sabido, el Art. II, Sec. 7 de la Constitución del Estado Libre Asociado de Puerto Rico dispone que "[n]inguna persona será privada de su libertad o propiedad sin [un] debido proceso de ley...". CONST. ELA art. II, § 7, LPRA, Tomo 1. La garantía constitucional del debido proceso de ley opera en dos dimensiones, a saber: (1) la vertiente sustantiva y (2) la vertiente procesal. *Román Ortiz v. Oficina de Gerencia de Permisos*, 203 DPR 947, 953 (2020); *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 394 (2018); *Aut. de Puertos v. HEO*, 186 DPR 417, 428 (2012). En lo pertinente al caso que nos ocupa, la vertiente procesal le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento justo y equitativo. *Picorelli López v. Dpto. de Hacienda*, 179 DPR 720, 735-736 (2010); *U. Ind. Emp. AEP v. AEP*, 146 DPR 611, 616 (1998). Véase, además, *Domínguez Castro v. ELA*, 178 DPR 1, 45-48 (2010).

Cónsono con lo anterior, el debido proceso de ley se define como el "derecho de toda persona a tener un proceso justo y con todas las debidas garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo". *Vendrell López v. AEE*, 199 DPR 352, 359 (2017); *Aut. de Puerto Rico v. HEO*, *supra*, pág. 428. Véase, también, *Marrero Caratini v. Rodríguez Rodríguez*,

138 DPR 215 (1995). Por ello, a los fines de cumplir con este postulado, se han reconocido una serie de garantías mínimas, a saber: (1) **una notificación adecuada del proceso**; (2) proceso ante un juez imparcial; (3) **la oportunidad de ser oído**; (4) el derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de abogado; y (6) que la decisión se fundamente en la evidencia presentada y admitida en el juicio. *Román Ortiz v. Oficina de Gerencia de Permisos*, *supra*, pág. 954; *Fuentes Bonilla v. ELA et al.*, *supra*, pág. 395; *Domínguez Castro v. ELA*, *supra*, pág. 47.

En esa dirección, conviene señalar que, -- como regla general --, nuestro ordenamiento jurídico reconoce el emplazamiento como el mecanismo procesal para notificar a un demandado que existe una reclamación judicial en su contra. *Banco Popular v. S.L.G. Negrón*, 164 DPR 855, 863 (2005); *Global v. Salaam*, 164 DPR 474, 480 (2005); *Quiñones Román v. CIA ABC*, 152 DPR 367, 374 (2000). En cuanto a ello, este Tribunal ha expresado que toda sentencia o dictamen de un tribunal en contra de un demandado que no ha sido **emplazado o notificado** conforme a derecho es nulo y, por tanto, no puede ejecutarse. *Torres Zayas v. Montano Gómez*, 199 DPR 458, 468-469 (2017); *Banco Popular v. S.L.G. Negrón*, *supra*, pág. 866; *Medina v. Medina*, 161 DPR 806 (2004).

Se trata, pues, del mecanismo que dispone las Reglas de Procedimiento Civil, 32 LPRA Ap. V, para que un

tribunal pueda adquirir jurisdicción *in personam* sobre la parte demandada, ya que de esa forma se satisface la mencionada cláusula del debido proceso de ley y el requisito de una notificación adecuada. *Rivera v. Jaume*, 157 DPR 562, 575 (2002); *Márquez v. Barreto*, 143 DPR 137, 142-143 (1997). Ello permite que éste ejerza adecuadamente su derecho a comparecer en el juicio, a ser oído y a presentar prueba a su favor. *Global v. Salaam*, *supra*, pág. 480; *Dátiz v. Hospital Episcopal*, 163 DPR 10, 15 (2004); *Rivera v. Jaume*, *supra*. Así, para que un tribunal pueda hacer efectiva su autoridad a los fines de considerar y decidir sobre un asunto, **"el método de notificación tiene que ofrecer una probabilidad razonable de informarle [al demandado] ... sobre la acción entablada en su contra, de forma tal que pueda comparecer a defenderse si así lo desea"**. *Banco Popular v. S.L.G. Negrón*, *supra*; *Lucero v. San Juan Star*, 159 DPR 494, 512-513 (2003); *Quiñones Román v. CIA ABC*, *supra*, pág. 374.

Ahora bien, en cuanto a los requisitos para la expedición de los emplazamientos, su forma y diligenciamiento, precisa remitirnos a la Regla 4 de Procedimiento Civil, *supra*. Particularmente, la Regla 4.1 del referido cuerpo de ley, 32 LPRA Ap. V, R. 4.1, requiere que el demandante presente el formulario de emplazamiento junto con la demanda, para su expedición inmediata por el Secretario o Secretaria del tribunal. Véase, *Rivera Marrero v. Santiago Martínez*, 203 DPR 462, 481 (2019); *Torres Zayas v. Montano Gómez*, *supra*, págs.

467-468. Mientras, la Regla 4.3, 32 LPRA Ap. V, R. 4.3, enumera las personas que pueden diligenciar el emplazamiento y el término que se tiene para ello. *Sánchez Rivera v. Malavé Rivera*, 192 DPR 854, 870 (2019). Sobre este particular, el inciso (c) de la mencionada regla preceptúa que "[e]l emplazamiento será diligenciado en el término de ciento veinte (120) días a partir de la presentación de la demanda o de la fecha de expedición del emplazamiento por edicto". 32 LPRA Ap. V, R. 4.3(c). Véase, *Sánchez Ruiz v. Higuera Pérez*, 203 DPR 982, 989 (2020); *Bernier González v. Rodríguez Becerra*, 200 DPR 637, 648 (2018). Término de ciento veinte (120) días que, según los pronunciamientos de este Foro, es uno improrrogable y no puede ser acortado por un tribunal. *Sánchez Ruiz v. Higuera Pérez*, *supra*, pág. 987; *Pietri González v. Tribunal Superior*, 117 DPR 638, 640 (1986); *Ortalaza v. F.S.E.*, 116 DPR 700, 703-704 (1985).

Asimismo, el precitado cuerpo reglamentario, en su Art. 4.4, 32 LPRA Ap. V, R. 4.4, dispone el procedimiento para el emplazamiento personal. En lo pertinente al presente caso, dicha regla expresa que cuando se trata del emplazamiento de una persona mayor de edad, el mismo se diligenciará entregando copia del emplazamiento y de la demanda a ella personalmente, o a un agente autorizado por ella o designado por ley para recibir un emplazamiento. *Sánchez Rivera v. Malavé Rivera*, *supra*, pág. 871; *Torres Zayas v. Montano Gómez*, *supra*, pág. 470.

III.

Habiendo reconocido que, como regla general, en toda acción judicial -- de naturaleza civil -- es a través del emplazamiento que un tribunal adquiere jurisdicción sobre la persona, es menester señalar aquí que en nuestro ordenamiento jurídico existen ciertas instancias en las que la Asamblea Legislativa ha adoptado mecanismos alternos para lograr tal propósito, sustituyendo la herramienta ordinaria del emplazamiento por otro tipo de procedimiento más flexible donde también se salvaguarden las garantías del debido proceso de ley

El proceso de *Impugnación de elección,* según contemplado en el Art. 10.15 de la Ley Núm. 58-2020, conocida como Código Electoral de 2020, 16 LPRA sec. 4501 *et seq*, es una de esas instancias.[14] En dicho caso, la Asamblea Legislativa  -- dada la naturaleza *sui generis* de este tipo de procedimiento -- intencionalmente estableció un mecanismo alterno para que un tribunal pudiese adquirir jurisdicción sobre la persona, a saber: **<u>la notificación personal del recurso de *Impugnación de elección* al candidato(a) impugnado(a).</u>**

Al respecto, y en lo pertinente a las controversias que nos ocupan, la mencionada disposición legal establece que cualquier candidato o candidata que desee impugnar la

---

[14] Entre dichas instancias, podemos resaltar las siguientes: (1) Regla 60 de Procedimiento Civil, *supra*, relacionada a reclamaciones de quince mil dólares ($15,000.00) o menos; (2) Ley sobre Controversias y Estados Provisionales de Derecho, Ley Núm. 140 de 23 de julio de 1974, 32 LPRA sec. 2871; (3) Ley contra el Acecho en Puerto Rico, Ley Núm. 284 de 21 de agosto de 1999, 33 LPRA sec. 4013; y (4) la Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 3118. Véase, *Alegato en Oposición a Recursos de Apelación* presentado por el Comisionado Electoral del Movimiento Victoria Ciudadana.

elección de otro, deberá presentar ante el Juez de la Sala de la Región Judicial que se haya designado conforme a la precitada ley -- y dentro de los diez (10) días siguientes a la fecha de la notificación de la certificación de elección -- un escrito juramentado exponiendo las razones en virtud de las cuales fundamenta su impugnación. Art. 10.15 del Código Electoral de 2020, 16 LPRA sec. 4765. Éstas razones deberán ser de tal naturaleza que, de probarse, serán suficientes para cambiar el resultado de la elección. *Íd.*

Más adelante, el discutido Art. 10.15 del Código Electoral de 2020, *supra*, reza:

> ...
>
> **Una copia fiel y exacta del escrito de impugnación será notificada al Candidato impugnado y se le entregará personalmente, dentro de los cinco (5) días siguientes a su presentación.**
>
> El candidato cuya elección fuese impugnada tendrá que presentar ante el Tribunal una contestación bajo juramento dentro de los diez (10) días siguientes a la fecha en que recibiere la notificación del escrito de impugnación y certificará haber notificado y entregado personalmente copia de su contestación al impugnador o a su representante legal. Se entenderá que la persona cuya elección fue impugnada acepta la impugnación como cierta de no contestar en dicho término.
>
> **La notificación, escrito y contestación prescritos en esta Ley, podrán ser diligenciados por cualquier persona competente para testificar y se diligenciarán mediante entrega personal a las respectivas partes, a sus representantes electorales, conforme a lo establecido en las Reglas de Procedimiento Civil o en la residencia u oficina de la persona a quien fueren dirigidas.** A los fines de este Artículo, el representante electoral de un candidato por un partido político será el integrante de la

Comisión Local del precinto de su domicilio que represente a su partido político. *Íd.*

Como se puede apreciar, en la precitada disposición estatutaria no se hace mención alguna al concepto emplazamiento o referencia específica alguna a la Regla 4.4 de Procedimiento Civil, *supra*, según discutida anteriormente en el Acápite II de este escrito. Tal como se señala en el bien elaborado alegato del licenciado Natal Albelo:

Un análisis del esquema estatutario aplicable a una acción de impugnación al amparo del Artículo 10.15 del Código Electoral revela que esta omisión no fue involuntaria, sino intencional. Como consecuencia, sería totalmente improcedente enmendar, por *fiat judicial,* el texto estatutario para incorporar un mecanismo que la Asamblea Legislativa descartó. Por el contrario, lo que corresponde es aplicar lo dispuesto por la Legislatura, sin añadir elementos adicionales expresamente descartados por esta.[15]

Se trata, pues, de la máxima de hermenéutica *expressio unius est exclusio alterius* cuyo propósito es determinar la intención del legislador. Cónsono con ello, si la Asamblea Legislativa opta por incluir o mencionar alguna cosa, palabra o concepto específico, se entienden

---

[15] Véase, *Alegato en oposición a recurso de apelación*, pág. 8.

excluidas aquellas que no fueron mencionadas. Véase, R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. JTS, 1987, Vol. 1, pág. 345. Así pues, tratándose de una omisión intencional, lo que procede es dar fiel cumplimiento a la voluntad legislativa y, en consecuencia, no añadir lo omitido. J.M. Farinacci Fernós, *Hermenéutica puertorriqueña*, San Juan, Editorial InterJuris, 2019, pág. 156.

En la pieza legislativa bajo estudio, es indiscutible el hecho de que los miembros de la Asamblea Legislativa, de forma diáfana, excluyó del texto estatutario la palabra "emplazamiento" y omitió hacer referencia a la Regla 4 de Procedimiento Civil, *supra*. Más bien, estableció un mecanismo especial -- entiéndase, el mecanismo de la notificación del escrito de *Impugnación de elección* -- como alternativa al mecanismo ordinario del emplazamiento. Lo anterior, precisamente, en virtud de la naturaleza *sui generis* del breve término que provee el Art. 10.15 del Código Electoral de 2020, *supra*, para notificar el recurso de *Impugnación de elección*.

Por último, precisa hacer mención que el Artículo 2.4 del Código Electoral de 2020, 16 LPRA sec. 4504, expresa que "[el] cómputo de los términos expresados en esta Ley se aplicará según las Reglas de Procedimiento Civil de Puerto Rico vigentes, excepto aquellos términos específicos dispuestos en esta Ley". Por tanto, cuando la

referida ley disponga un término específico para alguno de los procedimientos que contempla, se torna inaplicable la Regla 68.1 de Procedimiento Civil, *supra*, que provee para excluir los sábados, domingos y días feriados del cómputo del término, si se tratare de un plazo menor de siete (7) días.

Es, pues, a la luz de la normativa antes esbozada que procedemos a disponer de la presente controversia.

IV.

Como mencionamos anteriormente, en el presente caso, el Hon. Miguel A. Romero Lugo sostiene que el Tribunal de Primera Instancia carecía de jurisdicción sobre su persona, pues no solo se le debía notificar el escrito de *Impugnación de elección*, sino también diligenciar los emplazamientos expedidos por la Secretaría del Tribunal de Primera Instancia utilizando el correspondiente formulario que la OAT ha diseñado para tales fines. A su juicio, ambos documentos debían diligenciarse de forma simultánea dentro del término de cinco (5) días contados a partir de la presentación del recurso de *Impugnación de elección*. No le asiste la razón.

Y es que de una simple lectura del Art. 10.15 del Código Electoral de 2020, *supra*, surge con meridiana claridad que -- para casos como el de autos -- lo que se exige en ley es **<u>notificar</u>** al candidato electo impugnado una copia fiel y exacta del escrito de *Impugnación de elección* dentro del término de cinco (5) días desde que se presente ante el foro primario. Evidentemente, no se

requiere que dentro de igual término se diligencien los emplazamientos, conforme se realiza en procedimientos civiles de otra naturaleza. Lo verdaderamente indispensable es que el candidato impugnado tenga conocimiento -- dentro del mencionado término -- de la acción incoada en su contra, que éste pueda ser escuchado por el tribunal y que pueda defenderse, de así desearlo. Ello aquí se logró.

Recordemos que, como principio cardinal de hermenéutica, "cuando la ley es clara y libre de toda ambigüedad, su texto no debe menospreciarse bajo el pretexto de cumplir su espíritu". Art. 19 del Código Civil de 2020, 31 LPRA sec. 5341. Véase, Farinacci Fernós, *op. cit.*, págs. 72-78. Por consiguiente, cuando el legislador se ha expresado en un lenguaje claro e inequívoco, dicho texto es la expresión por excelencia de la intención legislativa. Tal es el caso de autos.[16]

Ahora bien, contrario a lo que algunos pudieran intimar, la referencia a las Reglas de Procedimiento Civil, *supra*, en el tercer párrafo del Art. 10.15 del Código Electoral de 2020, *supra*, se limita a informar quien podrá notificar el escrito y la forma en que ello se hará, entiéndase a quien se entregará o dónde. Como cuestión de hecho, así lo reconoció el propio Tribunal de Primera Instancia, a la página 13 de su *Sentencia*, al señalar que "…cuando se expresa la aplicación de las

---

[16] *Rosa Molina v. ELA*, 195 DPR 581 (2016); *Cordero et al. v. ARPe et al.*, 187 DPR 445, 456 (2012); *Soc. Asist. Leg. v. Ciencias Forenses*, 179 DPR 849, 862 (2010).

Reglas de Procedimiento Civil, se está refiriendo al procedimiento del diligenciamiento de la notificación mediante entrega personal o a un representante electoral".

Resolver lo contrario -- es decir, requerir el diligenciamiento del emplazamiento al igual que en otros procedimientos civiles -- tendría el efecto de proveer para ello un término de ciento veinte (120) días conforme la Regla 4.3 de Procedimiento Civil, *supra*, que, como bien mencionamos, no puede acortarse por un tribunal. Esto, a todas luces, desvirtuaría la intención del legislador de proveer un término tan breve como cinco (5) días para notificar la *Impugnación de elección*, cuyo propósito es atender asuntos de tal naturaleza con la celeridad que ameritan.[17]

V.

En fin, y a modo de epílogo, no albergamos duda alguna que la **notificación** de la demanda de *Impugnación de elección* aquí en controversia hizo las veces de un **emplazamiento**. A través de la misma, el Alcalde Electo del Municipio de San Juan, Hon. Miguel A. Romero Lugo, fue informado oportunamente -- es decir, dentro del término de cinco (5) días dispuesto en el Art. 10.15 del Código Electoral de 2020, *supra* -- de la acción judicial

---

[17] Aun si partiéramos de la premisa que el Código Electoral de 2020, *supra*, exige el diligenciamiento del emplazamiento tal como en otros procedimientos civiles, -- lo cual no es así --, el licenciado Natal Albelo cumplió con ello, ya que diligenció el mismo el 21 de enero de 2021; es decir, a siete (7) días de haberse incoado el recurso de *Impugnación de elección* y, por tanto, dentro del término de ciento veinte días (120) días establecido por la Regla 4.3 de Procedimiento Civil, *supra*.

incoada en su contra, garantizándole así su derecho a ser oído y a que pudiese defenderse; principios fundamentales del debido proceso de ley.

En el ámbito del derecho es norma trillada que **"el nombre no hace la cosa"**.[18] Aquí, a todas luces, estamos ante otro ejemplo de ello. No se cometieron los errores señalados.

## VI.

Es, pues, por los fundamentos antes expuestos, que estamos conformes con el curso de acción seguido por este Tribunal en el día de hoy.

Al así sentenciarlo, disponemos de otra controversia más, de las muchas que hemos atendido, que tiene su génesis en la aprobación a la ligera -- y sin consenso entre las distintas fuerzas políticas del País -- del nuevo código Electoral de 2020, *supra*. Cuerpo reglamentario que rigió el evento electoral al cual hemos hecho referencia. Urge, pues, que la Asamblea Legislativa pase juicio sobre el contenido de la referida pieza legislativa.

Angel Colón Pérez
Juez Asociado

---

[18] Véanse, *JMG Investment Inc. v. ELA*, 203 DPR 718, 719 (2019); *Mun. Rincón v. Velázquez Muñiz*, 199 DPR 989, 1002 (2015); *Batista Nobbe v. Junta de Directores*, 185 DPR 206, 223 (2012).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Manuel Antonio Natal Albelo, en su capacidad de candidato a la Alcadía de San Juan por el Movimiento Victoria Ciudadana<br><br>Recurrido<br><br>v.<br><br>Miguel A. Romero Lugo, en su capacidad de candidato impugnado y otros<br><br>Peticionarios | AC-2021-0027<br><br>Cons. con<br><br>AC-2021-0028 |

**Voto Particular Disidente emitido por el Juez Asociado señor RIVERA GARCÍA al cual se une la Jueza Asociada señora PABÓN CHARNECO.**

En San Juan, Puerto Rico, a 3 de marzo de 2021.

A la luz de las consideraciones que expongo a continuación, **disiento enérgicamente** del proceder de una Mayoría de este Tribunal en denegar los recursos de autos, y apartarse sin fundamento alguno del estado de derecho vigente y en franca violación a los principios constitucionales que rigen el debido proceso de ley. Estamos firmemente convencidos que la falta del diligenciamiento de un emplazamiento, además de ser una violación al debido proceso de ley, priva a los foros judiciales de adquirir jurisdicción sobre una persona e invalida cualquier dictamen judicial en su contra.

Por lo tanto, somos del criterio que el Tribunal de Apelaciones erró al revocar una *Sentencia* del foro primario

la cual desestimó la *Impugnación de Elección* por carecer de jurisdicción sobre la persona, ya que el candidato impugnado no fue emplazado dentro del término de cinco (5) días que establece el Código Electoral del 2020. En ese sentido, el foro apelativo incurrió en el gravísimo error de equiparar el diligenciamiento de una orden de mostrar causa con el emplazamiento requerido en la Regla 4 de Procedimiento Civil, *infra*. A todas luces, llámesele notificación o emplazamiento, de este ser defectuoso, no surtiría efecto sobre el candidato impugnado. Pues una determinación en contrario conlleva a fatales consecuencias en el proceso judicial y una clara violación al debido proceso de ley que alberga el candidato impugnado.

Por otro lado, la controversia objeto de estudio nos concedía la ocasión para atender un asunto novel en materia de derecho electoral, que evidentemente está revestido de un alto interés público, y, que por consideraciones de política pública requiere su inmediata resolución para impartirle certeza y celeridad al proceso de *Impugnación de Elección* dispuesto en el Código Electoral de 2020, *infra*. Específicamente, este caso nos ofrecía la oportunidad de determinar si el Art. 10.15 del Código Electoral de 2020, *infra*, requiere el emplazamiento de la demanda de Impugnación de Elección, conforme con la Regla 4.4 de Procedimiento Civil, al candidato impugnado dentro del término de cinco (5) días siguientes a su presentación, de

modo que el tribunal adquiera jurisdicción sobre la persona.[19]

Por los fundamentos que proceden, hubiéramos resuelto esta controversia en la afirmativa, y de una vez y por todas, le impartíamos certeza y celeridad al proceso de *Impugnación de Elección* dispuesto en el Código Electoral de 2020, *infra*. De esta forma, garantizaríamos su correcta aplicación en los eventos electorales, ya sean elecciones generales, especiales, o primarias.

**I**

La génesis de esta controversia se remonta al 31 de diciembre de 2020, cuando la Comisión Estatal de Elecciones (CEE) certificó al Hon. Miguel Romero Lugo (peticionario) como el alcalde del Municipio de San Juan.[20] Esta certificación le fue notificada al peticionario el 4 de

---

[19] El pleito instado en el Tribunal de Primera Instancia por el Lcdo. Manuel A. Natal Albelo fue desestimado por falta de jurisdicción sobre la persona del demandado. En su dictamen, el foro primario no consideró fundamento distinto para la desestimación. Igualmente, la revisión del foro apelativo intermedio se limitó a considerar el fundamento de falta de jurisdicción sobre la persona. Sin embargo, cabe destacar que, en el recurso presentado por la Comisionada Electoral del Partido Nuevo Progresista, la Lcda. Vanessa Santo Domingo-Cruz, esta planteó la existencia de otras controversias válidas relacionadas a este asunto. Asimismo, en la comparecencia del Hon. Francisco Rosado Colomer, Presidente de la Comisión Estatal de Elecciones (CEE), se esbozaron similares señalamientos. Estas otras controversias principalmente envuelven: (1) la falta de partes indispensables; (2) la insuficiencia del emplazamiento realizado al director del departamento legal del municipio de San Juan; (3) la falta de revisión judicial de la resolución administrativa CEE-RS-20-169 sobre la denegatoria de recuento de votos; y (4) que la demanda no expone una reclamación que justifique la concesión de un remedio. Por consideraciones de autolimitación judicial, nos circunscribimos a resolver únicamente la controversia según enmarcada en el texto de esta Opinión.

[20] *Certificación Comisión Estatal de Elecciones,* Apéndice de la Petición de *certiorari,* pág. 66.

enero de 2021 como resultado oficial de las elecciones habidas el pasado 3 de noviembre de 2020.[21]

Inconforme con la certificación emitida, el 14 de enero de 2021, el Lcdo. Manuel Natal Albelo (recurrido) acudió ante el Tribunal de Primera Instancia (TPI) y presentó una *Impugnación de Elección* al amparo del Art. 10.15 del Código Electoral de Puerto Rico de 2020 (Código Electoral).[22] A esos efectos, el recurrido cuestionó la certificación del peticionario, como Alcalde de San Juan, debido a unas presuntas irregularidades en el proceso de votación en la Unidad 77. En la demanda de *Impugnación de Elección* adujo que la cantidad de votos en controversia eran suficientes para cambiar el resultado de las elecciones. Por ello, solicitó que el foro de instancia permitiera la celebración de una nueva elección en esta Unidad y dejara sin efecto la certificación del peticionario como candidato electo a la alcaldía de San Juan.

Al día siguiente, el 15 de enero de 2021, el Tribunal de Primera Instancia emitió una *Orden de Mostrar Causa (Orden)*.[23] Esta *Orden* proveyó al peticionario hasta el 21 de enero de 2021 para que expresara las causas por las cuales

---

[21] *Notificación de Certificación Comisión Estatal de Elecciones*, Apéndice de la Petición de *apelación,* pág. 67

[22] *Impugnación de Elección*, Apéndice de la Petición de *certiorari,* pág. 34.

[23] *Orden de Mostrar Causa*, Apéndice de la Petición de *certiorari,* pág. 86.

no se debían conceder los remedios solicitados.[24] Asimismo, el tribunal le ordenó al recurrido a "diligenciar, y además notificar esta orden con copia del recurso y sus anejos a todos los peticionados, de conformidad a lo dispuesto en la Regla 4.4 de Procedimiento Civil".[25] Conforme a lo anterior, el 17 de enero de 2021, el recurrido solamente entregó al peticionario la *Orden* con su diligenciamiento *y* copia del escrito de *Impugnación de Elección*.[26]

El 20 de enero de 2021, el recurrido presentó una *Moción en Cumplimiento de Orden* en la cual sostuvo que incluyó los emplazamientos de todos los peticionados diligenciados, según ordenado por el foro de instancia.[27] En esta misma fecha, el Tribunal de Primera Instancia le notificó al recurrido que solo incluyó evidencia del diligenciamiento de la *Orden,* mas no así evidencia de los emplazamientos diligenciados de la demanda.[28] Por lo tanto, esa tarde el recurrido presentó al foro de instancia una *Solicitud de Expedición de Emplazamientos* para que proporcionaran los correspondientes emplazamientos.[29]

Según se desprende del expediente, el próximo día, 21 de enero de 2021, el recurrido presentó una *Moción Informativa para Aclarar el Récord* en la cual expresó que

---

[24] Íd.

[25] Íd. pág. 87.

[26] *Diligenciamiento,* Apéndice de la Petición de *certiorari,* pág. 93 y *Orden de Mostrar Causa*, Apéndice de la Petición de *certiorari,* pág. 94.

[27] *Moción de Cumplimiento de Orden*, Apéndice de la Petición de *certiorari*, pág. 91.

[28] *Notificación*, Apéndice de la Petición de *certiorari,* pág. 121.

[29] *Solicitud de Expedición de Emplazamientos*, Apéndice de la Petición de *certiorari,* pág. 123.

"por error e inadvertencia, [...] denominó el servicio de la Orden de Mostrar Causa y del recurso de impugnación como emplazamientos, cuando debió indicar en su moción que el diligenciamiento fue la Orden de Mostrar Causa y del recurso de impugnación con todos sus anejos".[30] **Ese mismo día**, el recurrido sometió al tribunal de instancia una *Moción Presentando Emplazamientos Diligenciados.*[31] **En esta, manifestó que sirvió copia del emplazamiento al peticionario**.[32] A su vez, planteó que los términos dispuestos en la Regla 68.1 de Procedimiento Civil eran de aplicación al diligenciamiento del emplazamiento de la *Impugnación de Elección*.[33]

En esta misma fecha, y **sin someterse a la jurisdicción del Tribunal**, el peticionario presentó ante el foro de instancia una *Moción de desestimación por falta de jurisdicción sobre la persona.*[34] En su petición arguyó que el recurrido no lo emplazó conforme al término específico de cinco (5) días dispuesto en el Art. 10.15 del Código Electoral.[35]

El 25 de enero de 2021, el peticionario nuevamente sin someterse a la jurisdicción del Tribunal, presentó una *Segunda moción de desestimación por falta de jurisdicción*

---

[30] *Moción informativa para aclarar el récord*, Apéndice de la Petición de *certiorari,* pág. 143.
[31] *Moción Presentando Emplazamientos Diligenciados*, Apéndice de la Petición de *certiorari,* pág. 331.
[32] Íd.
[33] Íd., pág. 332.
[34] *Moción de Desestimación por falta de jurisdicción sobre la persona*, Apéndice de la Petición de *certiorari,* pág. 297.
[35] Íd., pág. 305.

*sobre la persona, al haber transcurrido el plazo jurisdiccional para emplazar al candidato impugnado, sin que se hubiere hecho conforme a derecho.*[36] En síntesis, el peticionario solicitó la desestimación de la demanda por los argumentos esbozados en su moción anterior.[37]

Por su parte, ese mismo día, el recurrido presentó un escrito en *Respuesta en oposición a mociones de desestimación del candidato impugnado Miguel A. Romero Lugo*.[38] En su moción, destacó que cumplió con el emplazamiento dentro del término de cinco (5) días, según lo establece la Regla 68.1 de Procedimiento Civil.[39]

Cabe señalar que el 25 de enero de 2021, el peticionario acudió ante este Tribunal en auxilio de jurisdicción por vía del recurso de *Certificación*.[40] En cuanto a esta petición, el Tribunal emitió una *Resolución* en la que denegó expedir el recurso y la solicitud de auxilio.[41] En consecuencia, el Tribunal de Primera Instancia continuó con los procedimientos posteriores del caso.

Así las cosas, el 27 de enero de 2021, el peticionario sometió *Réplica* a la "Respuesta en oposición a mociones de desestimación del candidato impugnado Miguel A. Romero

---

[36] *Segunda moción de desestimación por falta de jurisdicción sobre la persona, al haber transcurrido el plazo jurisdiccional para emplazar al candidato impugnado, sin que se hubiere hecho conforme a derecho,* Apéndice de la Petición de *certiorari,* pág. 368.

[37] Íd. pág. 387.

[38] *Respuesta en oposición a mociones de desestimación del candidato impugnado Miguel A. Romero Lugo,* Apéndice de la Petición de *certiorari,* pág. 657.

[39] Íd. pág. 664.

[40] *Certificación*, Apéndice de la Petición de *certiorari,* pág. 404.

[41] *Resolución*, Apéndice de la Petición de *certiorari,* pág. 675.

Lugo".[42] En su comparecencia reafirmó que el emplazamiento fue tardío y que en la notificación inicial no se incluyeron los debidos emplazamientos.[43] Además, apuntaló que cuando se emplazó el 21 de enero de 2021, se hizo a través del Lcdo. Israel O. Alicea Luciano, Director de la Oficina de Asuntos Legales del Municipio de San Juan, funcionario municipal que no lo representa en su carácter personal sino en su carácter oficial.[44] En este sentido indicó que procedía la desestimación de la *Impugnación de la Elección* por razón de que no se le emplazó conforme a derecho y, por lo tanto, el tribunal no adquirió jurisdicción sobre su persona.[45] Junto a su *Réplica* además presentó una *Moción de desestimación por falta de jurisdicción sobre la materia y ausencia de una causa de acción que justifique la concesión de un remedio, sin renunciar al planteamiento de falta de jurisdicción sobre la persona.*[46]

Asimismo, el 28 de enero de 2021, el recurrido presentó una *Respuesta en Oposición* a las mociones de desestimación presentadas por el candidato impugnado, por el Presidente de la CEE y por la comisionada Electoral del

---

[42] *Réplica a "Respuesta en oposición a mociones de desestimación del candidato impugnado Miguel A. Romero Lugo",* Apéndice de la Petición de *certiorari,* pág. 680.

[43] Íd., pág. 691.

[44] Íd., pág. 688.

[45] Íd., pág. 691.

[46] *Moción de desestimación por Falta de Jurisdicción sobre la materia y ausencia de una causa de acción que justifique la concesión de un remedio, sin renunciar al planteamiento de falta de jurisdicción sobre la materia,* Apéndice de la Petición de *certiorari,* pág. 669.

Partido Nuevo Progresista.[47] En su oposición, el recurrido insistió que el Tribunal adquirió jurisdicción sobre el peticionario cuando se diligenció personalmente copia de la *Orden de Mostrar Causa* junto con el escrito de impugnación.[48]

En vista de todo lo anterior, el Tribunal de Primera Instancia emitió una *Sentencia* el 29 de enero de 2021.[49] Primero, concluyó que el emplazamiento del peticionario fue inoficioso ya que el candidato impugnado no fue emplazado dentro del término de cinco (5) días que establece el Código Electoral del 2020.[50] También, determinó que el Art. 10.15 del Código Electoral requiere la aplicación de la Regla 4.4 de Procedimiento Civil.[51] Además, resolvió que en el Art. 2.4 del Código Electoral, el término de cinco (5) días siguientes a la presentación de una impugnación y su notificación es uno específico y de carácter jurisdiccional, al que no le aplica la extensión de la Regla 68.1 de Procedimiento Civil.[52] Como resultado, el foro de instancia desestimó la *Impugnación de Elección* por carecer de jurisdicción sobre el candidato impugnado.[53]

Inconforme con este dictamen, el recurrido acudió mediante un recurso de *Apelación* ante el Tribunal de

---

[47] *Respuesta en Oposición a las mociones de desestimación presentadas por el candidato impugnado, por el Presidente de la CEE y por el comisionado electoral del PNP,* Apéndice de la Petición de *certiorari,* pág. 856.
[48] Íd., pág. 866.
[49] *Sentencia,* Apéndice de la Petición de *certiorari,* pág. 881.
[50] Íd., pág. 903.
[51] Íd., pág. 900.
[52] Íd.
[53] Íd., pág. 903.

Apelaciones.[54] Allá, alegó que el foro de primera instancia erró, primero, al invalidar el emplazamiento del candidato impugnado mediante la aplicación inconsistente de las Reglas de Procedimiento Civil.[55] Y que además, erró al determinar que no se adquirió jurisdicción sobre la persona, por no distinguir entre el procedimiento especial de notificación establecido en el Código Electoral de 2020 para la impugnación de elección y el emplazamiento bajo la Regla 4.4 de Procedimiento Civil.[56] Bajo estos fundamentos, le solicitó al foro intermedio revocar la *Sentencia* del foro inferior.[57]

Atendido el referido recurso, el 18 de febrero de 2021, el Tribunal Apelativo revocó la *Sentencia* emitida por el Tribunal de Primera Instancia.[58] En esencia, concluyó que el foro primario adquirió jurisdicción sobre la persona del candidato impugnado.[59] En particular, señaló que la entrega personal de la demanda, junto con la *Orden*, brindó una notificación adecuada al peticionario conforme a las exigencias del Art. 10.15 del Código Electoral y las Reglas de Procedimiento Civil.[60]

No conteste con la decisión, el peticionario acudió ante este Tribunal mediante recurso de *Apelación*, el 19 de

---

[54] *Apelación*, Apéndice de la Petición de *certiorari,* pág. 9.
[55] Íd., pág. 14.
[56] Íd.
[57] Íd., pág. 29.
[58] Panel Integrado por su presidenta, la Jueza Birriel Cardona, el Juez Bonilla Ortiz y la Jueza Cortes González. La Jueza Birriel Cardona **disintió**. *Sentencia Tribunal Apelativo*. Apéndice de la Petición de *certiorari,* pág. 1002.
[59] Íd.
[60] Íd.

febrero de 2021.[61] Manifestó que este Tribunal tiene jurisdicción para atender el recurso al amparo del Art. 3.002 de la Ley de la Judicatura y las Reglas 17 y 18(b) del Reglamento del Tribunal Supremo.[62] En la alternativa, nos solicitó que se expida como recurso de *Certiorari*.[63]

A su vez, ese mismo día compareció la Comisionada Electoral del Partido Nuevo Progresista, la Lcda. Vanessa Santo Domingo-Cruz, mediante un recurso de Apelación, solicitando la revisión y revocación de la sentencia emitida por el Tribunal de Apelaciones.[64] En síntesis, reiteró los mismos señalamientos de errores y argumentos que el peticionario respecto al emplazamiento del escrito de impugnación y el cómputo del término para diligenciarlo.[65] También, argumentó que erró el foro apelativo al no considerar otros planteamientos jurisdiccionales presentados para evaluar la desestimación en el foro inferior.[66] Principalmente, que los demás candidatos que aparecieron en la papeleta municipal de San Juan, y sobre todo a legisladores municipales que junto al peticionario componían una candidatura, debieron ser acumulados como partes indispensables, y que al no ser

---

[61] Petición de *Apelación*, pág. 1.
[62] Íd.
[63] Íd., pág. 2.
[64] Petición de *Apelación*, pág. 24.
[65] Íd., pág. 7.
[66] Íd., pág. 23.

debidamente emplazados dentro del término de cinco (5) días, procedía la desestimación de la impugnación.[67]

Ese mismo día, mediante *Resolución,* consolidamos ambos recursos y le ordenamos al recurrido que se expresara. Consonó con nuestra orden, el 22 de febrero de 2021, sometieron sus escritos ante este Tribunal el recurrido; el Hon. Francisco Rosado Colomer, Presidente de la Comisión Estatal de Elecciones; Gerardo A. Cruz Maldonado, Comisionado Electoral del Partido Popular Democrático; y Olvin Valentín Rivera, Comisionado Electoral del Movimiento Victoria Ciudadana.[68]

Evaluados los escritos de *Apelación* presentados por el Hon. Miguel A. Romero Lugo y la Lcda. Vanessa Santo Domingo-Cruz, hubiéramos acogido los recursos como *certiorari* y expedido los mismos. Con el beneficio de la comparecencia de las partes, procedemos a disponer correctamente de la controversia ante nuestra consideración.

## II

### A. Derecho al Voto y el Código Electoral

Desde el punto de vista constitucional, el derecho al voto en Puerto Rico es un **derecho fundamental** de avanzada a

---

[67] Íd., pág. 24.
[68] *Resolución*, el 19 de febrero de 2021, Tribunal Supremo de Puerto Rico, AC-2021-0027 y AC-2021-0028.

nivel mundial.[69] En Puerto Rico nuestra **Carta Magna** sabiamente reconoce que el "poder político emana del pueblo y se ejercerá con arreglo a su voluntad".[70]

Para viabilizar esa voluntad, la Asamblea Constituyente encomendó a la Asamblea Legislativa a disponer por ley "todo lo concerniente al proceso electoral y de inscripción de electores, así como lo relativo a los partidos políticos y candidaturas."[71] No obstante esta delegación, se le advierte que "[l]as leyes garantizarán la expresión de la voluntad del pueblo mediante el **sufragio universal, igual, directo y secreto, y protegerán al ciudadano contra toda coacción en el ejercicio de la prerrogativa electoral**".[72]

Con este mandato constitucional presente, la Asamblea Legislativa aprobó la Ley Núm. 58-2020, conocida como el Código Electoral de Puerto Rico de 2020 (Código Electoral).[73]

El Código Electoral, *supra*, es la actual ley especial que rige en Puerto Rico en materia de derecho electoral. Este Código derogó el anterior Código Electoral de 2011, *infra*. Entre sus principales propósitos se encuentra el de "[e]mpoderar a los electores facilitando su acceso a los procesos relacionados con el ejercicio de su derecho al

---

[69] Exposición de motivos, Código Electoral de Puerto Rico de 2020, Ley Núm. 58 de 20 de junio de 2020.
[70] Art. I, Sec. 1, Const. ELA, LPRA, Tomo 1.
[71] Art. IV, Sec. 4, Const. ELA, LPRA, Tomo 1.
[72] Art. II, Sec. 2, Const. ELA, LPRA, Tomo 1.
[73] 16 LPRA sec. 4501, *et seq*.

voto".[74] A su vez, coloca al elector como "el eje y protagonista" del sistema electoral, sin limitaciones ni condiciones procesales que, irrazonablemente menoscaben, limiten o compliquen su ejercicio al voto y su derecho a ser aspirante o candidato a cualquier cargo electivo, **siempre que cumpla con los requisitos constitucionales y aquellos dispuestos en esta Ley.[75]**

Precisamente, en aras de garantizar la voluntad política del pueblo, es que este Código Electoral, *supra*, contempla un mecanismo para impugnar los procesos electorales bajo circunstancias extraordinarias.

**B. Impugnación de Elección bajo el Código Electoral**

Para impugnar el resultado de una elección, el Art. 10.15 del Código Electoral, *supra*,[76] dispone el proceso siguiente:

> Cualquier Candidato que impugnare la elección de otro, **deberá presentar ante el Juez en la Sala de la Región Judicial de San Juan** designada de conformidad con el Capítulo XIII de esta Ley, y dentro de los diez (10) días siguientes a la fecha de notificación de la certificación de elección para cada cargo público electivo en el escrutinio general, un escrito, exponiendo bajo juramento las razones en que fundamenta su impugnación, las que deberán ser de tal naturaleza que, de probarse, bastarían para cambiar el resultado de la elección.
> **Una copia fiel y exacta del escrito de impugnación será notificada al Candidato impugnado y se le entregará personalmente, <u>dentro de los cinco (5) días siguientes a su presentación</u>.**
> El Candidato cuya elección fuese impugnada, tendrá que presentar ante el Tribunal una contestación bajo juramento, dentro de los diez (10) días

---

[74] Exposición de Motivos, Código Electoral de Puerto Rico de 2020, *supra*.
[75] Íd.
[76] 16 LPRA sec. 4765.

siguientes a la fecha en que recibiere la notificación del escrito de impugnación y certificará haber notificado y entregado personalmente copia de su contestación al impugnador o a su representante legal. Se entenderá que la persona cuya elección fue impugnada acepta la impugnación como cierta de no contestar en dicho término.

**La notificación**, **escrito y contestación prescritos en esta Ley**, podrán ser diligenciados por cualquier persona competente para testificar y **se diligenciarán mediante entrega personal a las respectivas partes, a sus representantes electorales, conforme a lo establecido en las Reglas de Procedimiento Civil o en la residencia u oficina de la persona a quien fueren dirigidas.** A los fines de este Artículo, el representante electoral de un candidato por un partido político será el integrante de la Comisión Local del precinto de su domicilio que represente a su partido político." (Énfasis suplido).[77]

El fin que persigue este remedio solicitado es **dramático**: exigirle al tribunal (1) decidir lo que el pueblo ya decidió, o, en caso de este no poder decidirlo, (2) dejar sin efecto la voluntad del pueblo, ejercida democráticamente, para así convocarlos a que nuevamente ejerzan su derecho fundamental al sufragio.[78]

Una lectura de las dos leyes electorales anteriores revela que **el lenguaje empleado por el Art. 10.15, del Código Electoral**, *supra*, **para impugnar una elección se ha mantenido esencialmente inalterado desde el 1977**, tanto bajo el Código Electoral de Puerto Rico para el Siglo XXI,[79]

---

[77] Íd. (Note que las Reglas de Procedimiento Civil, *supra*, y en particular, la Regla 4.4 sobre emplazamiento, no hacen mención de "representantes electorales". Además, del historial legislativo de la Ley 58-2020 surge que durante el informe de conferencia fue insertada la coma que separa "representantes electorales" de "conforme a lo establecido en las Reglas de Procedimiento Civil". *Véase* P. del S. 1314 de 10 de junio de 2019, 5ta Sesión Ordinaria, 18va Asamblea Legislativa, pág. 413, línea 12(ENTIRILLADO ELECTRÓNICO)).

[78] Art. 10.16, 16 LPRA 4766, *supra*.

[79] Art. 10.016, Código Electoral para el Siglo XXI, *supra*: "Cualquier candidato que impugnare la elección de otro **deberá presentar**

como bajo la anterior Ley Electoral de Puerto Rico, Ley

Núm. 4 de 20 de diciembre de 1977.[80]

Y es precisamente sobre la Ley Electoral de 1977,

*supra*, que este Tribunal tuvo la oportunidad de expresarse

---

**ante el Juez o Jueza en la Sala de la Región Judicial de San Juan** designada de conformidad con el Capítulo IV de esta Ley dentro de los diez (10) días siguientes a la fecha de notificación de la certificación de elección para cada cargo público electivo en el escrutinio general, un escrito exponiendo bajo juramento las razones en que fundamenta el mismo, las cuales deberán ser de tal naturaleza que de probarse bastarían para cambiar el resultado de la elección. **Una copia fiel y exacta del escrito se entregará personalmente dentro de los cinco (5) días siguientes a su presentación en la forma que más adelante se provee.** La persona cuya elección fuere impugnada tendrá que presentar ante el tribunal una contestación bajo juramento dentro de los diez (10) días siguientes a la fecha en que recibiere la notificación del escrito y certificará haber enviado o entregado personalmente copia de la misma al impugnador o a su representante legal. Se entenderá que la persona cuya elección fuera impugnada acepta la impugnación como cierta de no contestar en dicho término. **La notificación, escrito y contestación prescritos en esta Ley podrán ser diligenciados por cualquier persona competente para testificar y se diligenciarán mediante entrega personal a las respectivas partes, a sus representantes electorales conforme a lo establecido en las Reglas de Procedimiento Civil o en la residencia u oficina de la persona a quien fueren dirigidas.** A los fines de este artículo, el representante electoral de un candidato por un partido político será el integrante de la comisión local del precinto de su residencia que represente a su partido político." (Énfasis nuestro). 16 LPRA sec. 4206.

[80]   Art. 6.014 Ley Electoral de 1977, *supra*,: "Cualquier candidato que impugnare la elección de otro **deberá presentar ante el Tribunal de Primera Instancia,** dentro de los diez (10) días siguientes a la fecha de notificación de la certificación de los resultados electorales de cada posición en el escrutinio general, un escrito exponiendo bajo y [*sic*] juramento las razones [*sic*] en que fundare el mismo, las cuales deberán ser de tal naturaleza que, de probarse, bastarían para cambiar el resultado de la elección. **Copia fiel y exacta del escrito, se entregará personalmente dentro de los cinco (5) días siguientes a su radicación, en la forma que más adelante se provee.** Dentro de los diez (10) días siguientes a la fecha en que recibiere la notificación del escrito, la persona cuya elección fuere impugnada tendrá que radicar ante el Tribunal una contestación bajo juramento al escrito del impugnador, entregándole a éste o a su representante legal, copia de la misma, Disponiéndose que de no contestar en dicho término se entenderá que acepta la impugnación como cierta. **La notificación, escrito y contestación prescritas en esta ley podrán ser diligenciadas por cualquier persona competente para testificar, y se diligenciarán entregándolas personalmente a las respectivas partes, a sus representantes electorales, o dejándoles con alguna persona mayor de dieciséis años, en la residencia u oficina de la persona a quien fueren dirigidas.** A los fines de este Artículo, el representante electoral de un candidato será el miembro de la Comisión Local del precinto de su residencia que represente a su partido o su candidatura." (Énfasis nuestro).

previamente sobre el proceso de impugnación de elección.[81]

Por ejemplo, en Granados v. Rodríguez Estrada I, 124 DPR 1,
132 (1989), este Tribunal aclaró que la Ley Electoral
"concede al Tribunal Superior jurisdicción original para
considerar las impugnaciones. Aunque el precepto es
lacónico, para que pueda instarse la impugnación es
necesario que la Comisión Estatal haya certificado los
resultados. Antes no puede incoarse la acción".[82] En ese
sentido, la certificación de la CEE no implica que la
validez de cada voto esté definitivamente adjudicada.[83]
Cuando el candidato derrotado considere que ocurrieron
irregularidades que de probarse alterarían el resultado de
la elección, este puede instar una acción de impugnación
para cuestionar la validez de los votos que debían ser
contados o anulados.[84] Además, el referido Artículo
autorizaba la acción especial de impugnación únicamente al
candidato derrotado contra el candidato certificado; los
electores no eran acumulables como parte indispensable ni
necesaria.[85]

De esta manera, los Códigos Electorales que han
sustituido a la Ley Electoral de 1977 han preservado esta
causa de acción ante el tribunal y, por consiguiente, su

---

[81] Granados v. Rodríguez Estrada I, 124 DPR 1, 132 (1989)
(citando a Sánchez Fuentes v. C.E.E., 123 DPR 102 (1989), (opinión
concurrente y disidente, Juez Negrón García)).
[82] Íd.
[83] Íd.
[84] Granados v. Rodríguez Estrada I, supra, pág. 132.
[85] Granados v. Rodríguez Estrada II, 124 DPR 593, 635 (1989)
(Opinión disidente Negrón García, citando a Granados v. Rodríguez
Estrada I, supra).

normativa aplicable.[86] De lo anterior queda meridianamente claro que, **para impugnar el resultado de una elección, el proceso a seguir es mediante una reclamación judicial entablada ante el tribunal de primera instancia** para que este dilucide la controversia y adjudique derechos. Como veremos, las reglas a seguir en las causas de acciones civiles ante el tribunal son las Reglas de Procedimiento Civil, *infra*.

Ahora bien, este Tribunal no se ha expresado sobre los requisitos procesales particulares de la notificación y el término para entablar una acción de impugnación de elección.

### C. Reglas de Procedimiento Civil

Precisamente para canalizar las causas de acción ante los tribunales de una forma que "garanticen una solución justa, rápida y económica de **todo** procedimiento," es que la Asamblea Legislativa instituyó las Reglas de Procedimiento Civil de 2009.[87] De conformidad con las disposiciones del Artículo V, Sección 6 de la Constitución de Puerto Rico,

---

[86] Recientemente, en *Rodríguez Ramos v. Comisión Estatal de Elecciones*, 2021 TSPR 03, págs. 43-44, el Juez Asociado señor Martínez Torres disintió expresando que "[e]l peticionario en este caso impugnó la adjudicación de ciertos votos que cree son contrarios a la ley. Para impugnarlos, el peticionario debía cumplir con el Art. 10.15 de la Ley Núm. 58-2020, conocida como el Código Electoral de Puerto Rico de 2020, 16 LPRA sec. 4765 (Código Electoral de 2020). Este dispone que la acción de impugnación de la elección de un candidato nace una vez concluido el escrutinio y una vez la Comisión emita la certificación de elección del candidato que prevalece en la contienda, según se dispone en el Art. 10.11 del Código Electoral de 2020, 16 LPRA sec. 4761. Es conforme con esto que el aspirante afectado tendrá la oportunidad de exponer bajo juramento las razones de su impugnación, "que deberán ser de tal naturaleza que, de probarse, bastarían para cambiar el resultado de la elección". Art. 10.15 del Código Electoral de 2020, *supra*."

[87] Ley Núm. 220-2009, 32 LPRA Ap. V, R. 1.

este Tribunal primero adoptó y remitió a la Asamblea Legislativa estas nuevas Reglas para el Tribunal General de Justicia.[88] Estas reglas son unas de avanzada que promueven el acceso de la ciudadanía a la justicia además de viabilizar la agilidad en el manejo del caso y en el trámite procesal.[89] El alcance de estas Reglas es amplio y abarcador, pues por su diseño, el legislador quiso que aplicaren en "**todos** **los procedimientos de naturaleza civil ante el Tribunal General de Justicia**". (Énfasis suplido).[90] Por lo tanto, como norma general, la aplicación de las Reglas de Procedimiento Civil se debe presumir, **salvo haya una disposición de ley expresa al contrario.**

**D. Emplazamiento**

En reiteradas ocasiones hemos expresado que el emplazamiento es el documento mediante el cual se le notifica a una persona sobre la presentación de una reclamación en su contra ante los tribunales.[91] Hemos puntualizado que este mecanismo procesal es "parte esencial del debido proceso de ley, pues su propósito principal es notificar a la parte demandada que existe una acción judicial en su contra. De esta manera, la parte puede comparecer en el procedimiento, ser oído y presentar prueba

---

[88] *In re* Aprobación Rs. Proc. Civil, 176 DPR 673 (2009).
[89] Exposición de motivos, P. de la C. 2249 Ley Núm. 220-2009.
[90] Íd.
[91] *Torres Zayas v. Montano Gómez*, 199 DPR 458, 467 (2017); *Quiñones Román v. Compañía ABC*, 152 DPR 367 (2000); *Márquez v. Barreto*, 143 DPR 137, 143-144 (1997).

a su favor".[92] A través del emplazamiento, además, se le informa al demandado la cantidad de días que tendrá para presentar su contestación a la reclamación y se le apercibe de las consecuencias que tiene el no comparecer a defenderse.[93]

En lo pertinente a esta controversia, la Regla 4 de las de Procedimiento Civil regula el proceso de emplazamiento de una acción civil.[94] Así, esta requiere que el demandante presente un formulario de emplazamiento conjuntamente con la demanda, para su expedición inmediata por el Secretario o Secretaria del tribunal. Una vez expedido el emplazamiento por el Secretario, este se debe diligenciar conjuntamente con la demanda.[95] La Regla 4.3 indica que el diligenciamiento debe ocurrir dentro de ciento veinte (120) días de incoada la demanda. La Regla

---

[92] *Torres Zayas v. Montano Gómez*, supra, pág. 467.

[93] Regla 4.2. Forma: El emplazamiento deberá ser firmado por el Secretario o Secretaria, llevará el nombre y el sello del tribunal, con especificación de la sala, y los nombres de las partes, sujeto a lo dispuesto en la Regla 8.1. Se dirigirá a la parte demandada y hará constar el nombre, la dirección postal, el número de teléfono, el número de fax, la dirección electrónica y el número del abogado o abogada ante el Tribunal Supremo de Puerto Rico de la parte demandante, si tiene, o de ésta si no tiene abogado o abogada, y el plazo dentro del cual estas reglas exigen que comparezca la parte demandada al tribunal, apercibiéndole que de así no hacerlo podrá dictarse sentencia en rebeldía en su contra concediéndose el remedio solicitado en la demanda o cualquier otro, si el Tribunal, en el ejercicio de su sana discreción, lo entiende procedente. 32 LPRA Ap. V, R. 4.2.

[94] 32 LPRA Ap. V, R. 4.1.

[95] "El emplazamiento y la demanda se diligenciarán conjuntamente. Al entregar la copia de la demanda y del emplazamiento, ya sea mediante su entrega física a la parte demandada o haciéndolas accesibles en su inmediata presencia, la persona que lo diligencie hará constar al dorso de la copia del emplazamiento sobre su firma, la fecha, el lugar, el modo de la entrega y el nombre de la persona a quien se hizo la entrega. El diligenciamiento se hará de la manera siguiente: (a) A una persona mayor de edad, entregando copia del emplazamiento y de la demanda a ella personalmente o a un(a) agente autorizado(a) por ella o designado(a) por ley para recibir un emplazamiento." 32 LPRA Ap. V. R. 4.4.

4.4 regula el proceso del diligenciamiento del emplazamiento incluyendo la persona quien lo puede realizar y las personas a quien se tiene que emplazar en función de la condición jurídica del demandado.[96] No obstante, **la regla general es que el demandado debe ser emplazado personalmente** y que sólo por vía de excepción según disponen estas Reglas de Procedimiento Civil.[97]

El "diligenciamiento" **del emplazamiento** trata de la entrega formal de este documento a la parte demandada. Como norma general, se realiza mediante entrega personal.[98] Primero, la persona que lleve a cabo el diligenciamiento deberá entregarle al demandado **(1) una copia del documento de emplazamiento** y **(2) una copia de la Demanda**. (Énfasis suplido).[99] Luego, "hará constar al dorso de la copia del emplazamiento su firma, la fecha, el lugar, el modo de la entrega y el nombre de la persona a quien se hizo la entrega".[100] Por último, presentará en el Tribunal la constancia de haberlo hecho.[101]

---

[96] *Banco Popular v. S.L.G. Negrón*, 164 DPR 855, 863 (2005); *Lucero v. San Juan Star*, 159 DPR 494, 517 (2003); *Quiñones Román v. Cía. ABC*, 152 DPR 367 (2000); *Márquez v. Barreto*, 143 DPR 137, 143 (1997); *Pou v. American Motors Corp.*, 127 DPR 810, 819 (1991); *Granados v. Rodríguez Estrada II*, 124 D.P.R. 593, 610 (1989); *Rodríguez v. Nasrallah*, 118 D.P.R. 93, 98 (1986).

[97] R. Hernández Colón, Práctica Jurídica de Puerto Rico: Derecho Procesal Civil, 6ta ed., San Juan, Ed. Lexisnexis, 2017, Sec. 2005, pág. 261.

[98] Regla 4.4. Emplazamiento personal. Véase Regla 4.6. Emplazamiento mediante edictos y su publicación.

[99] Regla 4.4. Emplazamiento personal: El emplazamiento y la demanda se diligenciarán conjuntamente, *supra*.

[100] Íd.

[101] Regla 4.7.

La prueba del diligenciamiento se refiere a la constancia que, en virtud de la Regla 4.4 de Procedimiento Civil, *supra*, debe hacer la persona diligenciante al dorso del diligenciamiento del emplazamiento.[102] Esto consiste en

> presentar en la Secretaría del Tribunal el emplazamiento donde, por detrás, […], ésta declara bajo juramento que [cumple con los requisitos para ser diligenciante]. Adicionalmente, certifica que **diligenció <u>el emplazamiento y la demanda</u>** en una fecha específica, haciendo constar si fue mediante entrega personal de la parte demandante y su dirección física […]. (Énfasis suplido).[103]

### E. Cómputo de Términos

Respecto al cómputo de los términos aplicables, la Regla 68.1 de Procedimiento Civil, *supra*, dispone de forma **general** que

> En el cómputo de cualquier término concedido por estas reglas, o por orden del tribunal o por cualquier estatuto aplicable, no se contará el día en que se realice el acto, evento o incumplimiento después del cual el término fijado empieza a transcurrir. El último día del término así computado se incluirá siempre que no sea sábado, domingo ni día de fiesta legal, extendiéndose entonces el plazo hasta el fin del próximo día que no sea sábado, domingo ni día legalmente feriado. También podrá suspenderse o extenderse cualquier término por causa justificada cuando el Tribunal Supremo de Puerto Rico lo decrete mediante resolución. Cuando el plazo concedido sea menor de siete (7) días, los sábados, domingos o días de fiesta legal intermedios se excluirán del cómputo. Medio día

---

[102] J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, San Juan, Pubs. J.T.S., 1987, pág. 369.
[103] Cuevas Segarra, *supra*, pág. 369.

feriado se considerará como feriado en su totalidad.[104]

Por otra parte, para entablar una impugnación de elección oportunamente bajo el actual Código Electoral, *supra*, es indispensable tener presente que el "cómputo de **los términos expresados en esta Ley se aplicará según las Reglas de Procedimiento Civil** de Puerto Rico vigentes, **excepto aquellos términos específicos dispuestos en esta Ley**". (Énfasis suplido).[105]

**F. Debido Proceso de Ley**

Sabido es que, en nuestro sistema adversativo, el emplazamiento "representa el paso inaugural del debido proceso de ley que viabiliza el ejercicio de la jurisdicción judicial".[106] Es decir, **es el medio a través del cual los tribunales adquieren jurisdicción sobre la persona del demandado** de forma tal que el emplazado quede obligado por el dictamen que finalmente se emita.[107] Anteriormente hemos expresado que el emplazamiento contempla una dualidad de propósitos: notificar a la parte demandada en un pleito civil que se ha instado una reclamación judicial en su contra, y garantizarle su derecho a ser oído y a defenderse.[108] Es por esto que, en su tratado de Procedimiento Civil el profesor Hernández Colón

---

[104] 32 LPRA Ap. V, R. 68.1.

[105] Art. 2.4 del Código Electoral, *supra*, 16 LPRA sec. 4504.

[106] *Acosta v. ABC, Inc.,* 142 DPR 927, 931 (1997); *Reyes v. Oriental Fed. Savs. Bank,* 133 DPR 15, 22 (1993); *Pagán v. Rivera Burgos,* 113 DPR 750, 754 (1983).

[107] *Márquez v. Barreto,* 143 DPR 137, 142 (1997).

[108] *Banco Popular v. SLG Negrón,* 164 DPR 855, 863 (2005); *Banco Central Corp. v. Capitol Plaza,* 135 DPR 760, 763 (1994).

nos explica que el emplazamiento, "se mueve dentro del campo del Derecho Constitucional", pues "el acto de emplazar a un demandado es un imperativo constitucional del debido proceso de ley".[109]

Por otro lado, los requisitos del emplazamiento son de cumplimiento estricto y su adecuado diligenciamiento constituye un imperativo constitucional del debido proceso de ley.[110] Por ello, todo demandado tiene el derecho a ser emplazado "**conforme a derecho** y existe en nuestro ordenamiento una política pública de que la parte demandada debe ser emplazada debidamente para evitar el fraude y que se utilicen procedimientos judiciales con el propósito de privar a una persona de su propiedad sin el debido proceso de ley". (Énfasis suplido).[111] Esta política pública impone todas las exigencias y requisitos sobre los hombros del demandante, no sobre los del demandado.[112]

En ese contexto, nuestro ordenamiento constitucional prohíbe que una persona sea privada de su libertad o propiedad sin el debido proceso de ley.[113] En su vertiente propiamente procesal, el debido proceso de ley requiere que, de verse afectado algún derecho de propiedad o libertad de un ciudadano, este tendrá acceso a un proceso

---

[109] R. Hernández Colón, op. cit., pág. 257.
[110] *Quiñones Román v. Cía. ABC,* 152 DPR 367, 374 (2000). Véase, además, *Sánchez Rodríguez v. Administración de Corrección,* 177 DPR 714 (2009).
[111] *First Bank of P.R. v. Inmob. Nac., Inc.,* 144 DPR 901, 916 (1998).
[112] Íd.
[113] Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1.

que se adherirá a los principios de justicia e imparcialidad.[114]

Es norma de fuerte arraigo constitucional que la falta del diligenciamiento de un emplazamiento, además de ser una violación al debido proceso de ley, priva a los foros judiciales de adquirir jurisdicción sobre una persona e invalida cualquier dictamen judicial en su contra.[115]

Por otro lado, hemos reiterado que la jurisdicción es "el poder o autoridad de un tribunal para considerar y decidir casos o controversias".[116] En particular, la jurisdicción sobre la persona es "[e]l poder del tribunal para sujetar a una parte a su decisión".[117] Es decir, es la autoridad del foro judicial para "emitir una decisión obligatoria para las partes declarando sus respectivos derechos y obligaciones".[118]

Los tribunales están llamados a ser celosos guardianes de su jurisdicción.[119] Este es el primer asunto que estamos obligados a considerar, ya que los asuntos jurisdiccionales son de naturaleza privilegiada y deben ser resueltos con preferencia a cualquier otro.[120]

---

[114] *Rivera Rodríguez & Co. v. Stowell Taylor*, 133 DPR 881 (1993).
[115] *Rivera Marrero v. Santiago Martínez*, 203 DPR 462 (2019); *Cirino González v. Adm. Corrección*, 190 DPR 14, 30 (2014); *In re Rivera Ramos*, 178 DPR 651, 666-667 (2010); *Global v. Salaam*, 164 DPR 474, 480 (2005); *Acosta v. ABC*, Inc., 142 DPR 927, 931 (1997).
[116] *SLG Solá-Moreno v. Bengoa Becerra*, 182 DPR 675, 682 (2011).
[117] *Trans-Oceanic Life Ins. v. Oracle Corp.,* 184 DPR 689, 691 (2012).
[118] Íd.
[119] *Dávila Pollock et al. v. R.F. Mortgage*, 182 DPR 86, 97 (2011).
[120] *Cruz Parilla v. Dpto. Vivienda*, 184 DPR 393, 403 (2012).

En ese sentido, hemos reiterado como norma que con relación a la jurisdicción sobre la persona del demandado, el tribunal puede adquirirla de dos (2) maneras: "(1) utilizando adecuadamente los mecanismos procesales de emplazamiento provistos en las Reglas de Procedimiento Civil, o (2) mediante la sumisión voluntaria de la parte demandada a la jurisdicción del tribunal".[121] En ese sentido, y en ausencia de una sumisión voluntaria a la jurisdicción del tribunal, los tribunales adquieren jurisdicción sobre la persona del demandado una vez se realiza el **diligenciamiento del emplazamiento**. Por ello, "no es hasta que se diligencia el emplazamiento y se adquiere jurisdicción que la persona puede ser considerada propiamente parte […]".[122]

Precisamente, y en aras de salvaguardar el derecho al debido proceso de ley en su vertiente procesal, es que la Asamblea Legislativa incorporó el mecanismo del emplazamiento dentro de las Reglas de Procedimiento Civil, *supra*, para que una parte demandada, si así lo desea, ejerza su derecho a comparecer en el juicio, ser oído y presentar prueba a su favor.[123] En consecuencia, esta exigencia procesal permite al tribunal adquirir

---

[121] *Márquez v. Barreto*, 143 DPR 137, 142-44 (1997).
[122] *Torres Zayas v. Montano Gómez*, 199 DPR 458, 467 (2017).
[123] *Quiñonez Román v. Compañía ABC*, 152 DPR 367 (2000); *Banco Popular v. Negrón Barbosa*, 164 DPR 855 (2005).

jurisdicción sobre la persona del demandado, quien quedará obligado por el dictamen que se emita eventualmente.[124]

Con el mismo ánimo, también la Oficina de Administración de los Tribunales (OAT) ha desarrollado varios formularios de emplazamiento publicados en el nuevo portal electrónico del Poder Judicial, a utilizar según la causa de acción.[125] No obstante, todos estos emplazamientos gozan de elementos comunes esenciales al debido proceso de ley, entiéndase, información que identifica a las partes, el número y materia del caso, la sala y competencia del tribunal que lo atiende, y una nota apercibiéndole a la parte emplazada que deberá presentar una alegación responsiva dentro de cierto término y que de lo contrario el tribunal podrá dictar una sentencia en su contra y conceder el remedio solicitado en la demanda.[126]

### G. Hermenéutica

La función de los tribunales es interpretar la ley, sin juzgar su bondad o sabiduría.[127] Todas las leyes pueden requerir alguna interpretación, aún aquellas cuyo texto catalogamos como 'clarísimo'.[128] Al interpretar una ley,

---

[124] *Márquez v. Barreto*, 143 DPR 137, 143-144 (1997).

[125] Poder Judicial, https://www.poderjudicial.pr/index.php/formularios/(última visita, 1 de marzo de 2021)

[126] Véase OAT-1578 Emplazamiento (Rev. Junio 2015), Reglas de Procedimiento Civil de 2009.https://www.poderjudicial.pr/index.php/formularios/(última visita, 1 de marzo de 2021).

[127] *Brau Linares v. ELA*, 190 DPR 315, 337 (2014); *Corraliza v. Bco. Des. Eco.*, 153 DPR 161, 176 (2001); *Famania v. Corp. Azucarera de P.R.*, 113 DPR 654 (1982).

[128] *Yiyi Motors, Inc. v. ELA*, 177 DPR 230, 249 (2009); *Otero de Ramos v. Srio. De Hacienda,* 156 DPR 876, 883-884 (2002).

"hay una regla de interpretación que es absolutamente invariable y esta es que debe descubrirse y hacerse cumplir la verdadera intención y deseo del poder legislativo".[129] Es obligación de los tribunales armonizar, hasta donde sea posible, todas las disposiciones de ley inherentes al caso, con miras a lograr un resultado sensato, lógico y razonable que represente la intención del legislador.[130] Por esto, los tribunales no pueden hacer una lectura aislada de porciones de una ley,[131] sino que deben leerla y considerarla en el contexto de la totalidad de la legislación de la cual es parte.[132] No obstante la separación de poderes, "[e]l profundo respeto que nos merece la intención del legislador nos obliga en determinadas ocasiones a suplir las inadvertencias en que éste pueda haber incurrido".[133]

## III

En el caso ante nuestra consideración, el peticionario sostiene que erró el Tribunal de Apelaciones al concluir que en una Impugnación de Elección bajo el Art. 10.15 del Código Electoral no es necesario emplazar conforme a la Regla 4.4 de las Reglas de Procedimiento Civil, *supra*, y en su consecuencia, la mera entrega personal del recurso presentado es suficiente para que el tribunal adquiera

---

[129] *Dorante v. Wrangler de PR*, 145 DPR 408, 417 (1998)(citando a R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, San Juan, Pubs. J.T.S., 1987, págs. 241-242.)

[130] *Andino v. Fajardo Sugar Co.*, 82 DPR 85, 94 (1961); *García Commercial v. Srio. de Hacienda*, 80 DPR 765, 774-775 (1958).

[131] *Brau Linares v. ELA*, supra, pág. 339.

[132] *Consejo Titulares v. DACo*, 181 DPR 948 (2011).

[133] *Pueblo v. Zayas Rodríguez*, 147 DPR 530, 548 (1999)(citando a *Hull Dobbs Co. v. Tribunal Superior*, 82 DPR 77, 84 (1961)).

jurisdicción *In Personam* sobre el candidato impugnado. Por los fundamentos jurídicos enunciados tenemos la firme convicción que este error se cometió. Veamos.

En apretada síntesis, el peticionario arguye en su recurso que la controversia de este caso se enmarca en un planteamiento constitucional. Este aduce que la figura del emplazamiento es el primer paso cónsono con el debido proceso de ley que viabiliza el ejercicio de la jurisdicción judicial dentro de nuestro sistema adversativo.[134] Sostiene que el Art. 10.15 del Código Electoral expresamente establece que la **notificación**, **escrito** y **contestación** prescritos en esta Ley, deben ser diligenciados **conforme a lo establecido en las Reglas de Procedimiento Civil, *supra***. En ese sentido, esboza que la "notificación" a la que se refiere el Art. 10.15, es al "emplazamiento" del escrito de impugnación de elección.

Por otro lado, el recurrido afirma en su *Alegato*, que el Art. 10.15 del Código Electoral únicamente requiere que se notifique personalmente al candidato impugnado del recurso de impugnación de elección presentado como mecanismo para adquirir jurisdicción sobre su persona. Aduce que la notificación que exige el Código Electoral, se refiere a la entrega personal del **escrito de impugnación** al candidato impugnado, pues esta por sí sola, es una notificación suficiente, que cumple con los requerimientos

---

[134] *Acosta v. ABC, Inc.,* 142 DPR 927, 931 (1997).

básicos del debido proceso de ley. Este afirma que el proceso de impugnación de una elección al amparo del Código Electoral es una de las instancias en las cuales la Asamblea Legislativa intencionalmente estableció un mecanismo alterno para adquirir jurisdicción sobre la persona, entiéndase, la notificación personal del recurso de impugnación al candidato impugnado. Además, plantea que así lo razonó el legislador debido a la naturaleza *sui generis* de un recurso de impugnación de elección que incorpora un esquema procesal especial mediante el cual la Asamblea Legislativa optó por acortar los términos y, a la vez, "flexibilizar el mecanismo para adquirir jurisdicción sobre la persona del demandado". Este esboza que, como consecuencia, y por diseño legislativo, la Regla 4.4 de Procedimiento Civil se torna inaplicable a los recursos de impugnación de elección bajo el Código Electoral.

Comenzamos por resaltar que "**la entrega de la demanda es <u>insuficiente</u> para completar el diligenciamiento del emplazamiento. <u>Debe entregársele al demandado también copia del emplazamiento</u>**, pues la Regla 4.4 requiere que el emplazamiento y la demanda se diligencien conjuntamente. **El conocimiento del demandado del litigio no cura los defectos del diligenciamiento**". (Citas omitidas) (Énfasis suplido).[135] En el caso ante nuestra consideración, la demanda es el "escrito de impugnación de elección" y el

---

[135] Cuevas Segarra, op. Cit., pág. 324.

emplazamiento es la "notificación", conforme surge del Art.

10.15 del Código Electoral, *supra*. Nos explicamos.

De una lectura textual del Art. 10.15 sobre

impugnación de elección se establece que

> Una **copia fiel y exacta del escrito de impugnación** será **notificada al Candidato impugnado** y **se le entregará personalmente, dentro de los cinco (5) días siguientes a su presentación.**
> El Candidato cuya elección fuese impugnada, tendrá que presentar ante el Tribunal **una contestación** bajo juramento, dentro de los diez (10) días **siguientes a la fecha en que recibiere la notificación del escrito de impugnación** y certificará haber notificado y entregado personalmente copia de su contestación al impugnador o a su representante legal. […]
> **La notificación**, **escrito** y **contestación** prescritos en esta Ley, podrán ser diligenciados por cualquier persona competente para testificar y **se diligenciarán mediante entrega personal** a las respectivas partes, a sus representantes electorales, **conforme a lo establecido en las Reglas de Procedimiento Civil** o en la residencia u oficina de la persona a quien fueren dirigidas. (Énfasis suplido).[136]

Según se desprende de este Art. 10.15 del Código Electoral,

*supra*, se mencionan tres (3) documentos distintos,

entiéndase: (1) el **escrito de impugnación**; (2) la

**contestación a este escrito**; y (3) la **notificación del**

**escrito de impugnación**. Asimismo, en el último párrafo, se

hace referencia conjuntamente a los tres documentos

mencionados, para indicar que estos **serán diligenciados**

**conforme a lo establecido en las Reglas de Procedimiento**

**Civil**, *supra*, o en la residencia u oficina de la persona a

quien fueren dirigidas. En ese sentido, esta disposición

---

[136] Art. 10.15, Código Electoral, *supra*.

legal **sujeta** el diligenciamiento de estos tres (3) documentos a las Reglas de Procedimiento Civil, *supra*. De manera que, al armonizar este estatuto con lo dispuesto en las Reglas de Procedimiento Civil, *supra*, la regla a la cual se alude aquí es claramente la Regla 4 de Procedimiento Civil, *supra*, sobre emplazamientos. Una conclusión en contrario se separaría claramente de lo que textualmente este artículo exige. Esto es, que la notificación del escrito de impugnación tiene que ser diligenciado conforme con la Regla 4.4 de Procedimiento Civil, *supra*, es decir, mediante el **mecanismo del emplazamiento**.[137]

De esta forma, cuando el Código Electoral, *supra*, hace alusión a una "notificación", a lo que se refiere es al mecanismo procesal exigido por el debido proceso de ley para poner en conocimiento al demandado de la reclamación pendiente en su contra y que pueda tener los elementos de juicio para decidir cómo desea responder a ella. Es precisamente esto lo que hace el emplazamiento. Tal como

---

[137] De manera ilustrativa, nos parece persuasivo que específicamente sobre el requisito de **emplazar** a un candidato impugnado, en *Ramos Hernández v. Comisión Estatal De Elecciones*, KLCE20101679 (TA 2010), el Tribunal de Apelaciones resolvió que "la persona que interesa impugnar la elección de un candidato y por consiguiente, su certificación, tiene que presentar su recurso en el Tribunal de Primera Instancia **de acuerdo a los términos y el trámite que establece la ley y las Reglas de Procedimiento Civil**, las cuales regulan los procesos civiles en nuestros Tribunales. Esto incluye **el emplazamiento** a las personas o entidades contra las que se reclama, **conforme a la Regla 4 de Procedimiento Civil, a fin de que el TPI pueda ejercer su jurisdicción sobre esas partes**". Esto, al interpretar el Art. 6.014 de la derogada Ley Electoral de Puerto Rico, *supra* (disposición análoga al Art. 10.15 del actual Código Electoral, *supra)*, el cual requería que "[l]a parte promovente tendrá la responsabilidad de **notificar** copia del escrito de revisión a la Comisión Estatal y a cualquier parte afectada."

hemos expresado, "el nombre no hace la cosa".[138] De modo que, "**[e]s el emplazamiento o una notificación** el mecanismo procesal mediante el cual el tribunal hace efectiva su jurisdicción y le informa al demandado que existe una reclamación en su contra.[139] **El emplazamiento ⸺o la notificación correspondiente⸺**, es el vehículo procesal que brinda el paso inaugural del debido proceso de ley que viabiliza el ejercicio de la jurisdicción judicial. Valga la ocasión resaltar, que "[e]l emplazamiento es un acto complejo y rodeado de tecnicismos […]" que "[s]on reglas o normas de carácter impositivo", "de las cuales no se puede dispensar" y "a las cuales hay que dar estricto cumplimiento".[140]

Por lo tanto, resulta forzoso concluir, que es improcedente la pretensión del recurrido de que interpretemos que, por usarse en la ley la palabra "notificación" en lugar de la palabra "emplazamiento", de esta manera el legislador "flexibilizó" un requisito de estirpe constitucional⸺del debido proceso de ley⸺ exigido en toda acción judicial. Independientemente del título que se le asigne, proveerle a la parte demandada el escrito que propiamente le notifica sobre la reclamación en su contra y que le apercibe de las consecuencias de no comparecer, es una exigencia del debido proceso de ley. No hay duda que la

---

[138] *Roig Pou v. Registro Demográfico de Puerto Rico*, 203 DPR 346, 364 (2019).
[139] Cuevas Segarra, op. cit., pág. 301.
[140] R. Hernández Colón, op. cit., pág. 257.

parte demandada tiene derecho a que el emplazamiento cumpla con el rigor que exige la cláusula del debido proceso de ley. Por consiguiente, la parte demandante está impedida de flexibilizar unilateralmente los requisitos del emplazamiento por mecanismos menos rigurosos y de forma acomodaticia. Tal pretensión es impermisible en nuestro ordenamiento jurídico y atentaría contra las garantías mínimas que imperan en nuestro diseño constitucional.

En vista de que el peticionario no se sometió voluntariamente a la jurisdicción del tribunal, procedía utilizar adecuadamente el mecanismo de emplazamiento para que el tribunal adquiriese jurisdicción sobre su persona. En el presente caso, el recurrido presentó la demanda de *Impugnación de Elección* el 14 de enero de 2021. El 17 de enero de 2021, solo le diligenció al peticionario la *Orden de mostrar causa* emitida por el TPI, y la copia del escrito de impugnación. Por lo tanto, el recurrido incumplió con lo dispuesto en el Artículo 10.15 sobre el <u>diligenciamiento de la **notificación** del escrito de impugnación</u>, que no es otra cosa que el diligenciamiento del emplazamiento. Es decir, no le entregó el documento de emplazamiento que le notifica al peticionario que se instó un pleito en su contra, y el término que tiene para contestar la demanda, entre otras advertencias exigidas por el debido proceso de ley. Sobre este punto, **debe advertirse "que la omisión de esta advertencia [del plazo para contestar la demanda] acarrea**

**la nulidad del emplazamiento por infracción al debido proceso de ley por falta de notificación adecuada".** (Énfasis suplido).[141] **En el presente caso, ninguno de los documentos entregados al momento de diligenciarse la** *Orden de Mostrar Causa* **surge la advertencia del plazo que tenía el peticionario para contestar la demanda**. Es pertinente distinguir que la advertencia que hizo el TPI al peticionario en la *Orden de Mostrar Causa* solo fue a los efectos de contestar precisamente esa Orden, mas no así, el plazo que tiene el peticionario para contestar la demanda, lo cual es el requisito indispensable para una **notificación adecuada** conforme al debido proceso de ley.

Ante esa realidad fáctica, el 20 de enero de 2021, el TPI le notificó al recurrido que solo había presentado evidencia del diligenciamiento de la *Orden de mostrar causa*, mas no así de los correspondientes emplazamientos sobre el escrito de *Impugnación de Elección*. No obstante, ese mismo día el recurrido solicitó al tribunal que expidieran los correspondientes emplazamientos. Sin embargo, no fue hasta el día siguiente, es decir, el 21 de enero de 2021, que lo diligenció, de forma inoficiosa, al Lcdo. Israel O. Alicea Luciano, funcionario municipal. Ahora bien, aun bajo el supuesto de que el recurrido diligenció estos emplazamientos dentro del término provisto en el Art. 10.15 del Código Electoral, *supra*, lo hizo de

---

[141] R. Hernández Colón, op. cit., pág. 261-262.

manera defectuosa. Pues, no olvidemos que esta disposición exige que la **"notificación**, **escrito y contestación" "se diligenciarán mediante entrega personal"** **al candidato impugnado**.

Por otro lado, el hecho que el recurrido diligenciara los emplazamientos el 21 de enero de 2021 tuvo como consecuencia que los diligenciara fuera del término establecido en el Art. 10.15 del Código Electoral, *supra*. Es decir, para que el recurrido hubiera podido cumplir cabalmente con el término específico de cinco (5) días siguientes a la presentación del escrito de Impugnación de Elección, tenía hasta el 19 de enero de 2021 para diligenciar los emplazamientos del escrito de *Impugnación de Elección.* Sin embargo, no fue hasta siete (7) días después de presentada la demanda de *Impugnación de Elección* que diligenció la notificación correspondiente al candidato impugnado. Por lo tanto, el TPI en su sentencia determinó correctamente que el emplazamiento al peticionario fue inoficioso por haberse realizado fuera del término establecido en el Art. 10.15 del Código Electoral, *supra*.[142]

En vista de lo anterior, el recurrido plantea que, de este Tribunal entender la aplicación de la Regla 4.4 de Procedimiento Civil, *supra*, a la controversia de autos, entonces corresponde aplicar la Regla 68.1 de Procedimiento

---

[142] A su vez, el TPI hizo constar en una nota al calce que el emplazamiento al aquí compareciente fue inoficioso por haberse diligenciado a través del Director de la Oficina de Asuntos Legales del Municipio de San Juan, el 21 de enero de 2021.

Civil, *supra*, que regula el cálculo de términos menores de siete (7) días. Como previamente expusimos, esta regla dispone de forma general cómo se computarán los términos que conceden las Reglas de Procedimiento Civil, *supra*, o los estatutos aplicables, y señala que "[c]uando el plazo concedido sea menor de siete (7) días, los sábados, domingos o días de fiesta legal intermedios se excluirán del cómputo".[143]

No obstante, el término de cinco (5) días que establece el Art. 10.15 del Código Electoral, *supra*, es un **término específico**. Esto surge del propio texto de la ley especial. De forma pertinente, el Artículo 2.4 del Código Electoral, *supra*, dispone que "**[e]l cómputo de los términos expresados en esta Ley se aplicará según las Reglas de Procedimiento Civil** de Puerto Rico vigentes **excepto aquellos términos específicos dispuestos en esta Ley**".[144]

Conforme con lo anterior, este Tribunal ha reiterado como principio básico en la interpretación de estatutos que una disposición de carácter especial sobre la materia prevalece sobre una de carácter general.[145] Además, hemos expresado que "al interpretar una disposición legal específica debemos evaluar las diferentes secciones de la ley en que ubica y relacionarlas las unas con las otras, para, dentro del contexto general en que han sido

---

[143] Regla 68.1 32 LPRA Ap. V.
[144] Código Electoral, *supra*.
[145] *Carlos M. Suárez Molina Recurrido v. Comisión Local de Elecciones de Cataño*, 2020 TSPR 129, citando a *Pueblo v. Plaza Plaza*, 199 DPR 276, 285-286 (2017).

redactadas, atribuirles el sentido que mejor responda a lo que se ha querido obtener con su aprobación".[146] A tenor con lo antes mencionado y en el contexto del presente caso, lo que esto significa es que el Código Electoral es un estatuto especial sobre la materia y que al analizar sus distintas secciones, específicamente el Artículo 2.4, se le puede atribuir lo que se ha querido obtener con su aprobación, que en este caso no es otra cosa que clasificar el término de los cinco (5) días como un **término específico**.

El Art. 10.15 del Código Electoral, *supra*, expresamente establece que "[u]na copia fiel y exacta del escrito de impugnación será notificada al Candidato impugnado y se le entregará personalmente, **dentro de los cinco (5) días siguientes a su presentación**". Es decir, expresamente establece que dentro de los cinco (5) días siguientes a su presentación es que será notificada al candidato impugnado una copia de la demanda de Impugnación de Elección. Por lo tanto, al legislador calificar el término específico de cinco (5) días y particularmente añadirle la frase "**dentro de** los cinco (5) días **siguientes a su presentación**" enmarcó la ininterrupción de este término específico.

Es por esta razón, que no nos convence la argumentación del recurrido en torno a la aplicación de la

---

[146] Íd., pág. 9.

Regla 68.1 para calcular el término de los cinco (5) días siguientes a su presentación para diligenciar la notificación del escrito de impugnación al candidato impugnado. Esto, pues el legislador, conscientemente y de manera inequívoca, excluyó la aplicación de las Reglas de Procedimiento Civil, *supra*, de los términos específicos mencionados en esta ley. De igual forma, al denominar el término específico y calificarlo con la frase "dentro de los cinco (5) días siguientes a su presentación", el legislador dejó clara e inequívocamente su intención de no permitir la interrupción de este término. Máxime cuando el Código Electoral, *supra*, está predicado en consideraciones de política pública y de un alto interés público, para que estos asuntos **se atiendan con celeridad.**

En vista de lo que precede, este Tribunal debió resolver que conforme al Art. 10.15 del Código Electoral, *supra*, **es <u>necesario</u> cumplir con el requisito del diligenciamiento del emplazamiento de la demanda de Impugnación de Elección al candidato impugnado** dentro del término de cinco (5) días siguientes a su presentación. De no cumplirse, salvo que el demandado se someta voluntariamente a su jurisdicción, el tribunal carece de jurisdicción sobre su persona.

**IV**

Por todo lo anterior, disiento enérgicamente del curso decisorio tomado en este caso. En su lugar, hubiera

expedido el recurso y revocado el dictamen del Tribunal de Apelaciones. En consecuencia, reinstalaría la *Sentencia* del Tribunal de Primera Instancia que desestimó la demanda en el presente caso por haberse incumplido con el término establecido en el Código Electoral del 2020 para emplazar al candidato impugnado.

Edgardo Rivera García
Juez Asociado